# Goetter, Weil & Co. v. Smith Bros.

### *Statutory Trial of the Right of Property.*

1. *Fraudulent conveyance; rescission of void mortgage as consideration for sale does not vitiate the sale.*—Where, after the execution of a mortgage upon a stock of goods, which, by reason of the privileges granted therein to the mortgagor, is void as to existing and subsequent creditors of the mortgagor, the mortgagor, becoming insolvent, sells his entire stock of merchandise to the mortgagee in payment of the indebtedness the mortgage was given to secure, and upon the further consideration of the payment by the vendee of other debts owing by the debtor, said mortgage is thereby rescinded, and the sale is not vitiated by reason of the former existence of the void mortgage; the parties having the right to rescind the mortgage, and the sale being a new, distinct and independent transaction, unaffected by the invalidity of the mortgage.

2. *Same; mortgagee owes other creditors of mortgagor no duty to receive other securities stipulated for in mortgage.*—Where, in a mortgage upon a stock of goods there is a stipulation that the mortgagor shall subsequently deliver to the mortgagee the notes and mortgages derived from sale of the merchandise conveyed in the mortgage, the mortgagee is under no duty to other creditors of the mortgagor to have the proceeds from the notes and mortgages agreed to be delivered applied to the payment of his mortgage debt, unless the existence of such other creditors was known by the mortgagee, or there were circumstances putting him on inquiry as to their existence.

3. *Same; when bill of sale not void on its face as to existing creditors of the vendor.*—Where the recited consideration contained in a bill of sale of a stock of goods is the payment of debts, and there is therein no indication of the embarrassment or insolvency of the vendor, or that there was any disparity between the amount of the debts and

31

the value of the goods, or of any fact from which the legal conclusion could be drawn that there was an intent to hinder, delay or defraud the vendor's creditors, such bill of sale is not void on its face as to the existing creditors of the vendor.

4. *Same; what constitutes the reservation of a benefit to the vendor in a bill of sale.*—To constitute the reservation of a use or benefit to an insolvent debtor in a bill of sale, executed by him to one of his creditors in payment of a debt, rendering the sale fraudulent as to his other creditors, there must be conferred some right which is inconsistent with an absolute, unconditional sale, or there must be secured a use or benefit which does not result from the nature and character of the sale and which, whether expressed or not, the law operating on the sale would not confer.

5. *Same; stipulation in bill of sale that the vendor should appoint the creditors to whom any surplus should be paid is no reservation of a benefit, which vitiates the sale.*—The stipulation in a bill of sale of a stock of goods by an insolvent debtor to one of his creditors, upon the recited consideration of the payment of his indebtedness to the vendee, that if the value of the stock of goods, as finally determined, exceeds the consideration expressed in the bill of sale, the vendor should have the right to appoint other creditors to whom the excess should be paid by the vendee, is not the reservation of a use or benefit to the vendor, vitiating the sale as to the creditors of the vendor.

6. *General affirmative charge.*—The general affirmative charge can never be given at the request of either party, if there is evidence upon which a jury may legally find a verdict against the party requesting it.

APPEAL from the Circuit Court of Coosa.

Tried before the Hon. JAMES R. DOWDELL.

This was a Statutory claim suit instituted by the appellees, Smith Brothers, interposing a claim to certain property, which had been levied upon under an attachment sued out by Goetter, Weil & Co. against Gosden & Co.

Upon the trial of the issue, as shown by the bill of exceptions, the plaintiffs proved that the indebtedness of Gosden & Co. to them fell due in the month of November, 1890; that a part of this indebtedness was contracted in July, 1890, and the balance subsequent to that time, and all of it was for goods and merchandise sold by the plaintiffs to the defendants. The attachment was sued out on December 2, 1890, and levied upon the stock of goods in the storehouse occupied by Gosden & Co, on the same day.

The claimants' right and title to the property

claimed was predicated upon the following facts : On January 1, 1890, the claimants sold to the defendants, Gosden & Co., a stock of goods, wares and merchandise then situated in town of Goodwater, Coosa county, Alabama, for the sum of $5,500, for which said Gosden & Co. executed their promissory notes, which were secured by a mortgage. The notes and mortgage were introduced in evidence. The latter, which was duly executed, was as follows : "We hereby agree to transfer and assign to Smith Bros., as collateral security, to secure our notes to them dated January, 1890, due and payable as follows, viz. : one for one thousand dollars due October 15, 1890 ; one for one thousand dollars due November 1st, 1890 ; one for one thousand dollars due December 15th, 1890 ; one for one thousand dollars due January 1st, 1891; and one for one thousand, five hundred and sixty-four dollars, due February 1st, 1891 ; all notes and mortgages for goods and supplies and other merchandise as we may sell of the stock of goods bought by us from them at Goodwater, Ala., or any other goods &c. we may add to stock, or buy between now and the 1st day of August, 1890, and until the amount of solvent notes and mortgages so turned over by us shall equal twice the amount we owe on said notes ; and we hereby, also for the security of said notes give said Smith Brothers a lien on said stock of goods and all other goods we may add to said stock until our notes to them are fully paid." Said notes and mortgage were held by Smith Brothers until December 20, 1890, on which day Gosden & Co. executed to said Smith Brothers the following bill of sale : "In consideration of the sum of forty-three hundred and sixty-nine 50-100 dollars, ($4,369.50) which we, Gosden & Co., are due to Smith Brothers, of Syllacauga, Ala., which is made up of the following sums, viz., three thousand, five hundred and sixty-four and 50-100 dollars ($3,564.50), in notes due Smith Brothers ; three hundred and five dollars, money advanced us this fall, and five hundred dollars which the said Smith Brothers have assumed, and hereby agree to pay for us to certain farmers, which we owe said farmers for cotton purchased of them ; we hereby sell and transfer and deliver to said Smith Brothers the entire stock of goods, wares and general merchandise now in our storehouses at Goodwater, Ala., at and for the price of sixty-five *per cent.* of the

cost prices of said goods, an invoice of the said goods to be taken at the earliest possible time. Should said stock of goods fail to pay the sum due the Smith Brothers, when invoiced, then we agree to pay said Smith Brothers such balance as may be found due them after deducting the price of the goods from the above indebtedness, and should said stock of goods, upon the invoice being taken, more than pay said sums of money due Smith Bros., then said Smith Bros. are to hold said sums over and above the amount due them in their hands subject to our order to pay our other creditors; the invoice of said stock of goods to be attached hereto as part of this contract of sale, and the said Smith Brothers agree to the terms of this contract, which is evidenced by their execution of the same with us."

The claimants testified that the sum of $3,565.50 mentioned in the bill of sale was the balance due upon said notes, which said mortgage had been given to secure, and which remained unpaid at the time of said sale; that contemporaneously with the making of the said sale, and as a part of the same transaction, they, Smith Brothers, delivered the said notes and said mortgage to said Gosden & Co., "as paid up and discharged in full." The claimants also testified that they paid to the farmers, referred to in said bill of sale, the sum of $500 which they had agreed to pay, and that they also released to Gosden & Co. the further sum of $300 therein mentioned. They further testified that on the same day the bill of sale was executed, they, the claimants, took possession of the goods, wares and merchandise formerly owned by Gosden & Co., which were sold to them, and that they were in possession of said stock of goods when the plaintiffs' attachment was levied on them; that between the time they took possession and the time of the levy, they made an inventory of said stock of goods, on the basis of 65 cents on the dollar of the cost price, and the said inventory disclosed that the value of the goods on such basis was not sufficient to pay the sum of $4,369.50, the indebtedness mentioned in the bill of sale, and that for the deficiency Gosden & Co. executed their due bill, which still remains unpaid. The claimants and the defendants denied that in making said sale there was any secret benefit reserved to said Gosden & Co., or that said Gosden & Co. had derived any benefit therefrom.

In rebuttal to the evidence of the claimants as to the value of the goods, the plaintiffs introduced evidence tending to show that they were worth, at the time of the sale, 85 cents on the dollar of the cost, and that the stock of goods when originally sold by Smith Brothers to Gosden & Co. was sold at the cost price, and $500 worth of goods were included in this, without being estimated, making the stock, as originally purchased, worth $6,000, while the purchase price was only $5,500. This, however, was denied by the claimants. It was also proved without conflict, that between January 1, 1890, and December 20, 1890, Gosden & Co. took notes and mortgages for sales from their stock of goods made on a credit, and from such notes and mortgages they collected as much as $5,000, no part of which was paid over to Smith Brothers, the claimants.

Upon the introduction of all the evidence, the plaintiffs requested the court to give to the jury the following written charges and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe the evidence, they must find for the plaintiffs, Goetter, Weil & Co." (2.) "If the jury believe from the evidence that Smith Bros. were, prior to and at the time of their purchase of the goods, claiming a lien on the goods under and by virtue of the mortgage in evidence, and only delivered up said mortgage and the notes secured thereby contemporaneously with, and as a part of, the transaction by which Gosden & Co. sold the goods to Smith Bros., then the title claimed by Smith Bros. under said purchase was invalid as against creditors of said Gosden & Co. at the date of said purchase." (3.) "The mortgage from Gosden & Co. to Smith Brothers is fraudulent and void as to subsequent creditors of said Gosden & Co." (4.) "The bill of sale from Gosden & Co. to Smith Brothers is void on its face as against plaintiffs, who, if the jury believe the evidence, were creditors at the date of said bill of sale." (5.) "The jury is charged that the provisions of the bill of sale as to the manner in which any surplus shall be paid out and applied, renders the sale void, in that Gosden & Co. reserved the right to cause said money to be paid out only on their order." (6.) "The jury is charged that it was the duty of Smith Brothers to have caused to be applied to the mortgage debt all collections made by Gosden & Co. on the notes

and accounts transferred by the mortgage to Smith Brothers, and if they failed to do so, the amount so collected would be applied by the laws to the mortgage debt."

There were verdict and judgment for the claimants. The plaintiffs appeal, and assign as error the refusal of the court to give the several charges requested by them.

J. M. Chilton, for appellants.—1. The mortgage from Gosden & Co. to Smith Bros. was void, in that possession and the right to sell, both as to goods then on hand and such as might be afterwards acquired, is retained by the mortgagors. The third charge so asserting was improperly refused.—*Benedict v. Renfro*, 75 Ala. 121; *Robinson v. Elliott*, 22 Wall. 513; *Murray v. McNealy*, 86 Ala. 234.

2. Although the claimants might lawfully have purchased the property in payment of their debt, yet when they introduce the mortgage in evidence preceded by a statement that "the claimants' right and title to the property in dispute was predicated on the following evidence," plaintiff had the right to have the validity of the mortgage determined by court.—*Griel v. Marks*, 51 Ala. 566; *Bibb v. Mitchell*, 58 Ala. 657.

3. The bill of exceptions states that "contemporaneously with the making of said contract, and as a part of the same transaction, they delivered up said notes and said mortgage to said Gosden & Co., as paid off and discharged in full." This shows a purchase under the mortgage—a surrender of the equity of redemption. While a purchase independently of an invalid mortgage would not be affected by the invalidity of the mortgage, a purchase under the mortgage would, itself, be invalid.— *Thornton v. Cook*, 97 Ala. 630; *Delaware v. Ensign*, 21 Barb. 85; *Blakeslee v. Rossman*, 43 Wis. 116.

4. The contract of December 20, 1890, by which claimants acquired the property, was not a sale, but an assignment for the benefit of creditors.—Burrell on Assignments, 10; *Danner v. Brewer*, 69 Ala. 191; *Otis v. Maguire*, 76 Ala. 199.

5. But whether treated as an assignment or a sale, the instrument taken in connection with the admitted insolvency of Gosden & Co., disclosed on its face by the fact of preferences, was fraudulent and void as to cred-

itors, by reason of the provision that the surplus should
be held by Smith Bros. for the benefit of the other cred-
itors Gosden & Co., to be paid to them on the order of
Gosden & Co. Both sales and assignments must uncon-
ditionally surrender the property, free from the dominion
and control of the vendor or assignor. If such dominion
and control is reserved, the conveyance is conclusively
fraudulent, irrespective of the actual intent of the par-
ties.—Burrell on Assignments, § 429; *Gazzam v. Poyntz*,
4 Ala. 374; *Montgomery v. Kirksey*, 26 Ala. 184; *West v.
Snodgrass*, 17 Ala. 549; *Miller v. Stetson*, 32 Ala. 170.

6. Treated as a sale, the provision that the surplus
should be paid out for the benefit of creditors on the
order of the debtor, arms the debtor with the power of
choosing as between his creditors, and of giving orders
to the lowest bidder. It was clearly a reservation for
the benefit of the debtor. Any reservation of this char-
acter, avoids the conveyance as a sale.—Code of 1886, §
1730; *Levy v. Williams*, 79 Ala. 176; *Owens v. Hobbie &
Teague*, 82 Ala. 468; *McDowell v. Steele*, 87 Ala. 496;
*Parmer v. Parmer*, 88 Ala, 545; *McDermott v. Eborn*, 90
Ala. 260; *Harmon v. McRae*, 91 Ala. 401; *Bell v. Ken-
dall*, 93 Ala. 489; *Howell v. Bowman*, 10 So. Rep. 644.

7. The burden was upon claimants to show the
amount and *bona fides* of the debt claimed to have been
surrendered, as against plaintiffs, who were existing cred-
itors.—*Griffin v. Barney*, 2 N. Y. 371; *Leitch v. Hollister*,
4 N. Y. 211; *Goodrich v. Downs*, 6 Hill, 438.

W. D. Bulger, *contra.*—1. Claimants did not claim
title under or through the mortgage made by Gosden &
Co. to them, and such mortgage was not in evidence for
any such purpose and its validity was not involved in
any way in this suit. The 3d charge asked by appellant
was properly refused.—*Martin v. Hill*, 42 Ala. 275; *Wil-
liams v. Barksdale*, 58 Ala. 288; *M. & E. R. R. Co. v.
Kolb*, 73 Ala. 396; *Jefferson Co. Sav. Bank v. Eborn*, 84
Ala. 529. The validity or invalidity of the mortgage
from Gosden & Co. to Smith Bros. would not affect the
title acquired to the property by the purchase, evidenced
by the bill of sale of date of December 20, 1890, under
which title is claimed.—*Thornton v. Cook*, 97 Ala. 630;
*Owens v. Hobbie & Teague*, 82 Ala. 466.

2. The transaction had between Gosden & Co. and

Smith Bros. on the 20th of December, 1890, and evidenced by the bill of sale of that date, was an absolute unconditional sale for payment of antecedent debts free from reservation, and not a general assignment as claimed by appellants.—*Otis v. Maguire,* 76 Ala. 295; *Crawford v. Kirksey,* 55 Ala. 282; *Danner v. Brewer,* 69 Ala. 191.

3. The provision in the bill of sale that in case the price of the goods sold should exceed the debt due to Smith Bros. when the invoice was made up the excess should be held by Smith Bros. subject to the order of the vendors to pay other creditors, is not the reservation of any such beneficial interest in the property as will efface the *bona fides* of the sale. This provision only declares the legal effect of the transaction.—*Miller v. Stetson,* 32 Ala. 161; *Hindman v. Dill,* 11 Ala. 689.

4. All the charges asked by the appellant in the court below should have been refused, and there was no error in their refusal.—*Hodges v. Coleman,* 76 Ala. 103; *Knowles v. Street,* 87 Ala. 357; *Harmon v. McRae,* 91 Ala. 401.

BRICKELL, C. J.—The appellants sued out an attachment against the partnership of Gosden & Co., which was levied on a stock of merchandise in the possession of the appellees. The appellees, claiming property in the merchandise, instituted the statutory proceeding known as trial of the right of property, the issue in which, as prescribed by the statute, is an affirmation by the plaintiff in the process that the property levied on is the property of the defendant and liable to the satisfaction of the process. The assignments of error relate exclusively to the refusal of the court below on the trial to give instructions to the jury requested by the appellants. We prefer an examination of these instructions, without observing the order in which they appear from the bill of exceptions to have been requested.

The second and third instructions draw in question the validity of a mortgage the defendants in attachment had executed to the appellees. It is apparent from the bill of exceptions that the appellees did not deduce title to the merchandise by or through the mortgage, but through a subsequent purchase, having for its consideration, the rescission of the mortgage, the surrender

[Goetter, Weil & Co. v. Smith Bros.]

of the evidences of the indebtedness it was intended to secure, the validity and consideration of which were undisputed. It may be, as is insisted by the appellants, that the mortgage purporting the transfer of a stock of merchandise and the subsequent acquisition of merchandise by the mortgagors during the life of the mortgage, the mortgagors being entitled to possession and to buy and sell in the usual course of the trade of merchants, was fraudulent and void as to creditors of the mortgagors, existing or subsequent.—*Benedict v. Renfro*, 75 Ala. 121; *Murray v. McNealy*, 86 Ala. 234; *McDermott v. Eborn*, 90 Ala. 258. If this is true, it is not to be doubted that parties who have entered into a contract, actually or constructively fraudulent as to the creditors of the one or the other, may rescind it at any time before the rights of creditors have intervened. "The unmaking of a contract is within the power which made it, and is equally effectual."—Bishop on Contracts, § 812. The rule is very general, if not without exception, that before or after the consummation of a contract, the rights of third parties not being involved, parties to a contract may either rescind or modify it, and their mutual agreement is the only consideration necessary to support the rescission or modification.—1 Brick. Dig., 394, § 233. Contracts which are *contra bonos mores*, or which are infected with illegality of consideration, form no exception to the rule.—*Lea v. Cassen*, 61 Ala. 312. An exception of contracts fraudulent as to creditors would be unreasonable and unjust, infringing the freedom of contract pertaining to all who are *sui juris*, and would tend to the perpetuation, rather than to the undoing and destruction, of fraud. When the rescission is express, fairly and openly made, the parties intending to place themselves in the condition in which they were when the contract was made, or in the condition in which they would have been if it had not been made, no disability of contracting can be imputed to them because of their former contractual relations. And they may enter into any new and independent agreement, having for its subject matter the same property which was the subject matter of the contract annulled, into which they could have entered if that contract had never existed.—*Borland v. Mayo*, 8 Ala. 104; *Thornton v. Cook*, 97 Ala. 630; *Matthews v. Buck*, 43 Me. 265; *Tyler*

*v. Tyler*, 126 Ill. 525, s. c. 9 Am. St. Rep. 642. The evi-- dence is without conflict, that by mutual assent of the parties, the mortgage was rescinded, the relation of mortgagor and mortgagee was dissolved, and the new and different relation of vendor and vendee was formed, resting on a new and different consideration. The mort- gage debt was paid; as a liability of the mortgagors it was extinguished, and whatever of title to the merchan- dise was vested in them, passed to the appellees, not as mortgagees but in their new relation of purchasers. The validity or invalidity of the mortgage, though while in existence the appellees may have asserted title to or a lien upon the merchandise in controversy, and though the surrender of it may have formed part of the considera- tion and transaction of sale, can not be regarded as vitiating the sale. The sale was a new, distinct, inde- pendent arrangement, and its validity or invalidity de- pends upon other considerations. The second instruc- tion is not in accordance with these views; and the third asserts a mere abstract legal proposition, not pertinent or relevant to the case.

The stipulation in the mortgage by which the mort- gagors promised to deliver the mortgagees notes and mortgages derived from sales of the merchandise covered by the mortgage, to an amount equalling twice the amount of the mortgage debt, in its nature and effect, was an agreement for further and additional security. There is no principle of law or equity which compelled the mortgagees, for the ease or benefit of other creditors, to demand the security, or prevented them, if satisfied with the security of the mortgage, from releasing the mortgagors from the performance of the agreement. The proposition embodied in the sixth instruction, that it was the duty of the appellees to cause the collections made by the mortgagors on such notes and mortgages to be applied to the payment of the mortgage debt, and if they neglected the duty, the law would make the appli- cation, is singularly unsound, when applied to the evi- dence. The duty was not owing the mortgagors; it would not be insisted it was owing other creditors, unless the existence of such creditors was known, or there were circumstances putting the mortgagees on inquiry as to their existence. There is an absence of all evidence that during the period of these collections, the mortgagees

[Goetter, Weil & Co. v. Smith Bros ]

had any knowledge, or notice that the mortgagors were indebted to others, and without such knowledge or notice the duty could not arise. The circumstances are exceptiönal in which one creditor owes another the duty of active diligence to save him from loss or injury, present or prospective. It is enough that he does not employ his relation to work loss and damage to others standing in like relation.

The fourth instruction denounces the bill of sale void on its face as to the existing creditors of the vendors. And the fifth instruction denounces it as void, because of the stipulation that if the value of the goods, when invoiced, exceeded the debts owing the appellees and the five hundred dollars they promised to pay of debts the vendors owed others, the excess should remain in the hands of the appellees to be paid on the order of the vendors to their other creditors.

It is the recognized doctrine in this State, that, uncontrolled by a statutory regulation or inhibition, a debtor in failing circumstances, or actually insolvent, may make preferences among his creditors ; that he may pay one in full, though the consequence is, all others remain unpaid. He may not by a general assignment, or other instrument of conveyance having a like operation and effect, make preferences among his creditors. The statute (Code, § 1737) intervenes, and converts such an instrument into a security for the payment of all creditors. But he may sell to any, or all of his creditors, a part, or all of his property in payment of debts. The sale, notwithstanding the known embarrassment or insolvency of the debtors, and of its tendency, or inevitable effect to leave all other creditors unpaid, will be supported, if the debt or debts forming its consideration equal or exceed the fair and reasonable value of the property, the payment is the sole consideration, and there is not the reservation to the use and benefit of the debtor of something beyond that which results from the nature and character of the transaction, and which the law operating on it would secure.—*Hodges v. Coleman*, 76 Ala. 103 ; *Chamberlain v. Dorrance*, 69 Ala. 40 ; *McDowell v. Steele*, 87 Ala. 493 ; *Harmon v. McRae*, 91 Ala. 401 ; *Smith v. Collins*, 94 Ala. 394 ; *Steiner v. Lowery*, 98 Ala. 208. On its face the bill of sale imports an ordinary contract of bargain and sale in payment of

debts, with no indication of the embarrassment or insolvency of the vendors, or that there was any disparity between the amount of the debts and the value of the goods, or of any fact from which the legal conclusion could be drawn that there was an intent to hinder, delay or defraud the creditors of the vendors. Consequently, there is nothing apparent on the face of the bill of sale to justify the fourth instruction.

The evidence, however, discloses that the vendors were in a failing condition, a fact known to the appellees, and in view of which the sale was made. This brings us to the consideration of the fifth instruction and the inquiry it involves, whether the stipulation in the bill of sale, referred to in the instruction, is the reservation of a use and benefit to the vendors, vitiating the sale as to the creditors of the vendors. If the stipulation confers no right inconsistent with an absolute, unconditional sale, secures no use or benefit which does not result from the nature and character of such sale, and which, whether expressed or not, the law operating on the sale would confer, it is not to be deemed the reservation of a use or benefit, rendering the sale fraudulent as to creditors.—*McDowell v. Steele*, 87 Ala. 497; *Harmon v. McRae*, 91 Ala. 401. As is argued by the counsel for the appellants, the stipulation empowered the vendors to nominate and appoint the creditors to whom the excess should be paid. This, however, is the extent of the power they may exercise. So long as there were creditors, it was not contemplated that in any event the vendors should receive the excess, or exercise any other dominion over it than the appointment of the creditors to whom it should be paid. The power involves the power of preferring creditors; the power to prefer is a power the law confers, and the stipulation relating simply to the manner of paying the price, is in recognition of a legal right.—Bump on Fraud. Convey. (3d Ed.), 404; *Beach v. Bastor*, 47 Ill. 521; *Johnson v. McGrew*, 11 Iowa, 151.

We do not perceive the materiality of the contention that the instrument under which the appellees deduced title to the goods in controversy, imports an assignment for the security of creditors and not an absolute, unconditional sale in payment of debts. It was executed prior to the recent statute, and is not within its operation.

(Pamph. Acts, 1892–93, p. 1046.)  Whether deemed an instrument of bargain and sale, or an assignment for the security of creditors, if founded on a valuable consideration and uninfected by fraud, the title of the vendee, or of the assignee, would prevail. Whatever of fraud would vitiate the one, would vitiate the other.  The instrument imports an unconditional sale in the payment of debts.

A determinate price was fixed upon the goods, readily ascertainable.  The title passed irrevocably, there was no redeeming quality attached to it; no event in which it would revert to the vendors.  There is every element and quality of a sale, and not one of the distinguishing characteristics and qualities of an assignment.—*Danner v. Brewer*, 69 Ala. 191.

There was evidence proving, or tending to prove, the existence and validity of the debts the payment of which formed the consideration of the sale.  There was also evidence tending to prove that the debts in amount equalled the value of the goods.  The first instruction requested can never be given, if there is evidence upon which a jury may legally find a verdict against the party requesting it.—1 Brick. Dig. 335.  In this case there was such evidence, and the instruction was properly refused.

Affirmed.