# Deposit Bank of Frankfort, *v.* Caffee *et al.*

*Bill in Equity by Judgment Creditor to set aside Alleged Fraudulent Conveyance.*

1. *Fraudulent conveyance; to maintain bill attacking a conveyance the existence of the debt must be shown.*—In order for a creditor to maintain a suit in equity to set aside a conveyance as fraudulent, whether it be constructively or actually fraudulent, there must be shown the existence of a debt due the

complainant, for the payment of which, except for the convey-
ance, the property transferred could be made liable to credi-
tors; and in such suit the grantee in the conveyance must
have an opportunity to dispute the debt, and may plead any
defense, not merely personal, which the grantor or debtor
could have made against it.

2. *Competency of witness; transactions with and declarations by a
    deceased person.*—Under the provisions of the statute, which
    prohibits a party from testifying to "any transactions with or
    statements by a deceased person whose estate is interested in
    the result of the suit," (Code, § 1794), a party to a suit is not
    a competent witness to prove admissions or declarations made
    by the decedent, or transactions made with him in his life-
    time, when the purpose of the evidence is to diminish the
    rights of said decedent, or those claiming under him or in
    succession to him.

3. *Fraudulent conveyance; what constitutes the reservation of a
    benefit to the grantor.*—Where in a conveyance by a debtor to
    a creditor, in payment of an alleged debt, there is conferred
    some right which is inconsistent with the absolute uncondi-
    tional sale, or there is secured to or reserved for the grantor,
    either expressly or secretly, a use or benefit which does not re-
    sult from the nature and character of the sale, and which
    the law operating upon the sale would not confer, such facts
    constitute a reservation of the use or benefit to the grantor
    in said conveyance, rendering the sale fraudulent as to his
    other creditors.

4. *Sales; conveyance of real estate carries with it the right to the
    use and rents.*—The right to the use and benefits of land
    is one of the appurtenances and accompanies the conveyance
    of said land; and where land under lease is sold and con-
    veyed by warranty deed, the grantee in said deed, after its
    execution and delivery, is entitled to the accrued rents, un-
    less such rights to the rents or the rights to collect them is re-
    served to the grantor; but it is not necessary that this reser-
    vation of the rents and the rights to collect them should ap-
    pear in the face of the deed.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. W. L. PARKS.

The bill in this case was filed on January 18, 1899, by
the Deposit Bank of Frankfort, Kentucky, against An-
drew E. Chaffee, Annie E. Chaffee, W. P. Russell, L. B.
Jones and C. W. Jones, for the purpose of having set
aside and cancelled as fraudulent and void a deed made

by Andrew E. Caffee to his wife, Annie E. Caffee, and a mortgage executed by said Andrew and Annie Caffee to W. P. Russell. It was averred in the bill that the complainant was a judgment creditor of Andrew E. Caffee, and that the conveyances sought to be set aside were made for the purpose of hindering, delaying and defrauding the complainant; that each of said convey- ances was without consideration, and that the consid- eration expressed was simulated and fraudulent. The facts relied on by the complainant to authorize the relief were averred in detail. It was further averred that the defendants, L. B. and C. W. Jones, had purchased the plantation conveyed by Andrew E. Caffee to his wife, Annie E. Caffee, from said Annie E. Caffee. In their answer, the defendants denied the averments of fraud. The other facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the plead- ings and proof, the chancellor rendered a decree deny- ing the relief prayed for, and dismissing the bill. From this decree the complainants appeal, and assign the ren- dition thereof as error.

D. M. POWELL for appellant.—There was a reser- vation of a very material benefit, namely, retention of the rents for five years to the husband, A. E. Caffee. This was inconsistent with the nature and character of the sale set up in the face of the conveyance. Being such a reservation it rendered the conveyance void.— *Brit. & Amer. Mortg. Co. v. Norton*, 125 Ala. 522; *Beall & Coston v. Lehman, Durr & Co.*, 110 Ala. 450; *Craw- ford v. Kirksey*, 55 Ala. 293; *Lehman v. Kelly*, 68 Ala. 199; *Berney Nat. Bank v. Guyon*, 111 Ala. 501; *Smith v. Kaufman*, 100 Ala. 414.

WATTS, TROY & CAFFEY, *contra.*—The gravamen of the charges on which it is sought to set aside the deed to Mrs. Caffee and the mortgages to Dr. Russell is the fraud of Judge Caffee. Fraud will not be presumed, but must be proved. If the conduct of a party is not inconsistent with honest intention, the law prefers the

charitable construction which may be put upon an act. To convict of fraud, the proof must be clear and convincing.—*Adams v. Thornton*, 78 Ala. 489; *Pollak v. Searcy*, 84 Ala. 262-3; *Goetter v. Norman*, 107 Ala. 594; *McDonald v. Pearson*, 114 Ala. 642; 3 Brick. Dig. 344, § 195.

And the burden of establishing the charge is on the complainant.—*Tompkins v. Nichols*, 53 Ala. 200; *A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45, 52; 3 Brick. Dig. 430, §§ 388-89.

A denial by the party sought to be charged, supported by his oath, must be met by proof of two witnesses, or of one witness and strong corroborating circumstances. *Marshall v. Croom*, 52 Ala. 554.

The conveyance from A. E. Caffee to his wife, Annie E. Caffee was not fraudulent and void.—*Goetter v. Norman*, 107 Ala. 586; *Bailey v. Levy*, 113 Ala. 565; *Smith v. Kaufman*, 100 Ala. 414; *Carter v. Coleman*, 82 Ala. 182; *Hodges v. Coleman*, 76 Ala. 103; *Levy v. Williams*, 79 Ala. 176; *Mobile Bank v. McDonald*, 89 Ala. 434; *Caldwell v. Pollak*, 91 Ala. 358; *Bank v. Kennedy*, 91 Ala. 470; *Smith v. Collins*, 94 Ala. 403; *Chipman v. Glennan*, 98 Ala. 265; *Wilke v. Key*, 117 Ala. 285.

HARALSON, J—1. The rule seems to be settled with us, in a suit to set aside a fraudulent conveyance, whether it be constructively fradulent and therefore voidable as against past due debts, or actually fraudulent, and voidable as to future as well as to past obligations, that the existence of a debt, for the payment of which, except for the conveyance, the property transferred could be made liable to creditors, must appear; and that the grantee in the conveyance must have an opportunity to dispute the debt, and may plead any defense, not merely personal, which the grantor or debtor could have made against it.—*Yeend v. Weeks*, 104 Ala. 332; *Moore v. Curry*, 106 Ala. 286; *Lawson v. Ala. Warehouse Co.* 73 Ala. 293.

2. The original note in this case was executed by A. E. Caffee on the 16th September, 1892; was for $1,200, payable on the 1st of November, 1893, to R. P. Pepper at the Merchants & Planters' National Bank, Montgomery,

Ala., with interest from date at 6 per cent *per annum,* the consideration being, as recited, "as partial payment for the purchase of two fillies" (naming them). The note contained the further provision: "I hereby agree that the title to said fillies shall remain in R. P. Pepper until this note is paid and exchange." It was indorsed, "R. P. Pepper," and "pay S. B. Marks, Jr., Cashier, for collection, acc't of Deposit Bank of Frankfort, Ky. H. H. Watson, Cashier."

On the 1st of January, 1894, Caffee gave to the Deposit Bank of Frankfort, his note for $1,059.40, payable at said bank, with interest at 8 per cent. *per annum,* after maturity until paid. On the 11th November, 1894, he gave another note for $841.20, payable two months after date to and at said Deposit Bank, bearing 8 per cent. interest after maturity until paid; and still another, dated January 19, 1895, for $853, payable to and at said bank, two months after date, with interest as in the last note.

In his deposition in the cause said Caffee testified: "These notes [the ones last referred to] were executed under a specific contract in writing with H. H. Watson, cashier of the Deposit Bank of Frankfort, that they were to be collateral to the Pepper note and contract. I had a good deal of correspondece with Watson. I had paid a large amount on the colts, and I appealed to Watson to renew my note without repairing [impairing] my original contract. He replied that he could not renew the note, as Col. Pepper would not agree to it, but that he, Watson, would take another note as collateral, * * * and the collateral note was executed."

Again, on cross-examination, he testified: "I gave Pepper a note and contract for $400, and another note for $1,200. This note never did become the property of the Deposit Bank of Frankfort. The cashier wrote to me that it was Pepper's property, and that he could not renew it without Pepper's consent, but that he would take my notes as collateral to my original note and contract. Said Deposit Bank of Frankfort never claimed to me, that the note was their property, until

I offered to return, and insisted on returning the colts, and I was then notified by Mr. Chin, attorney for the bank, that I must settle or suit would be brought." Caffee, as the proof shows, made several payments from time to time on these notes.

Suit was afterwards, on the 16th day of November, 1896, brought by said bank against said Caffee on the note for $853, the one last above described, on which judgment was obtained in said court, on the 18th of August, 1898, for $1,086.12, besides costs. On this judgment an execution was duly issued against defendant, on the 8th day of September, 1898, which was, on the 16th July, 1899, returned by the sheriff, "No property found."

It thus appears, that the note on which suit was brought, and judgment obtained against Caffee, was the last of the three collateral notes above described, and was for the balance due on said original note, of $1,200, payable to said Pepper, the original note never having been surrendered or cancelled, and that Pepper was the owner of the note. Whether the Deposit Bank or Pepper ought to have instituted this suit, we do not consider, since it makes no difference for the purposes we have in hand. The fact remains, as shown by the undisputed evidence of defendants' witness, A. E. Caffee, that Pepper was a party beneficially interested in the debt, and having died, as the evidence shows, that his estate is interested in the result of this suit to collect that debt. Caffee, therefore, as objected by complainant, was an incompetent witness to prove the declarations or admissions made by Pepper, in a transaction between himself and Pepper, in respect to an agreement, not appearing in the note itself,—the object of the evidence being to show, that by such declarations of the deceased, Pepper, the indebtedness evidenced by the note had no existence in fact, or, that its consideration had failed. When the lips of Pepper, the beneficiary in the note, were closed by death, Caffee's lips were also sealed as to what occurred between them as to this transaction. Code. § 1794; *Key v. Jones*, 52 Ala. 238; *Boykin v. Smith*, 65 Ala. 299. This was the only evidence offered

by defendants to prove the non-existence of said debt. The other evidence clearly and satisfactorily shows, that the note on which the judgment was based, was for a valuable and adequate consideration.

3. The conveyance from Caffee to his wife, executed on the 20th January, 1896, assailed as fraudulent, was a fee simple and with warranty against the claims of all other persons. The consideration, as expressed therein is for the sum of four thousand dollars ($4,000) "for money received by me belonging to the separate statutory estate of said Annie E. Caffee, under the laws of this State, said indebtedness being accrued in the following manner: I collected and used for my own purposes, the yearly rental of her plantation in said Lowndes County, the same being four hundred and fifty dollars for each of the several years, 1891, 1892, 1893, 1894, 1895, amounting in the aggregate to the sum of twenty-two hundred and fifty dollars, and said lands having been again leased for five years, at the yearly rental of three hundred and fifty dollars, and five promissory notes executed to evidence the same, payable annually, and said rent notes I have used and transferred for money, which I have applied to my own purposes and transactions, said several sums of money amounting in the aggregate to the sum of seventeen hundred and fifty dollars, all said sums of money thus creating the said indebtedness of four thousand dollars as aforesaid: Now, therefore, I, Andrew E. Caffee, being desirous that the said debt may be paid and made secure to my wife, Annie E. Caffee, for and in consideration of the premises, and of the further sum of ten dollars to me in hand, paid by the said Annie E. Caffee, the receipt of which is hereby acknowledged, do hereby give, grant, bargain, sell and convey unto the said Annie E. Caffee, the following land, known as the Green place, situated in the county of Lowndes, and State of Alabama, to-wit [describing it by land office numbers], containing in all fifteen hundred and thirty-six acres, more or less," and "also the following described land in Perry County, Alabama, to-wit" (describing it). This last named tract of land is referred to as the Graham land.

It will thus be seen, that this deed, not only recites the consideration for it to be four thousand dollars, which was past due and owing to his wife, but it goes further, and enters into particulars as to how this indebtedness to his wife arose, by describing two debts owing to her by him, aggregating said sum of four thousand dollars. This sum of $4,000, is thus stated to be the only consideration on which said conveyance was made. If there was any other, it is not expressed, and, so far as appears, was private between them.

The consideration of this deed is charged in the bill to be simulated, "and that said conveyance was executed for the purpose of hindering, delaying and defrauding complainant in the collection of the indebtedness due and owing by the said A. E. Caffee to complainant.

We may dismiss the matter of the genuineness of the indebtedness to Mrs. Caffee from her husband in the sum of $4,000, and the adequacy of the consideration of the deed, by conceding for the purposes in hand, that the same was fair and adequate. It must be stated, that at the time of the conveyance, there was a mortgage on the Green place to one J. L. Hinson for $475, which is unpaid, and said conveyance to Mrs. Caffee was made subject to this mortgage, which she was to pay, as the proof tends to show.

The answer of defendants, A. E. Caffee and wife, sets up the same consideration as is averred in the bill, except that it adds to the $4,000 consideration as expressed therein, the sum of $500, the amount of a mortgage existing at the time, on the property, presumably the one to said Hinson, as there was no other mortgage on the property, and the proof tends to identify the one referred to as that of said Hinson.

J. C. Wood, a witness for complainant, testified that he rented the Green place, first, for five years, afterwards for one year, and then for another term of five years, and had charge of the place, at the time he was making his answer; that he paid, according to his recollection, for the first term of five years, $700, and for the second term. $650 per year. Under the latter lease, then. it would have been $3,250 for the last term of five years.

Mrs. Caffee in her deposition testified: "I had paid him [A. E. Caffee] approximately $4,500, *and gave him the use of the Green place five years for the property conveyed to me on the 20th January, 1896, referred to.*" Again she says: "As before stated, I loaned these rent notes [of her Moss plantation, amounting to $2,250 and $1,750, aggregating $4,000] to my husband to raise money on, and he agreed to convey the Green place to me for them, *and for some other considerations.* \* \* \* I accepted deed to Green place, etc., to me in full satisfaction of the rent notes for ten years [amounting, as shown, to $4,000], the $475 mortgage on the Green place, *and a relinquishment of the Green place for my husband's use for five years.* There was a lease at the time of the conveyance to Judge J. C. Wood. I have received none of the rents."

A. E. Caffee in his deposition testified: "I conveyed said Green place to my wife on or about 20th January, 1896. The consideration was $2,250, received by me from the first five rent notes, the $1,750 received by me from the second five notes, heretofore mentioned in full, $475 and interest note and mortgage to J. L. Hinson assumed, *and the profits and rents from Green place were retained by me for the years,* 1896, 1897, 1898, 1899 and 1900, but this consideration included 75 acres of land in Perry county, Alabama." Again he testified, in answer to the 6th cross-interrogatory, as to what other property he owned, at the date of said conveyance to his wife,—the 20th January, 1896,—besides that included in said conveyance,—the object of the question being evidently, to show that he was insolvent or in failing circumstances,—that he owned certain personal properties and assets, and among the number of his assets he states, the *"use of Green place for five years, of the cash value of $2,250,—rent notes for $650 per year during that period."* The italics employed above have been added by us.

A reservation of benefit which secures some use or benefit to the vendor, which does not result from the nature and character of the sale, renders a sale fraudulent.—*Goetter, Weil & Co. v. Smith,* 104 Ala. 492. In

that case it is held, that in order to sustain a conveyance of the kind, there shall be no reservation to the use and benefit of the debtor of something beyond that which results from the nature and character of the transaction, and which the law operating on would secure. See also, *Harmon v. McRea*, 91 Ala. 401; *McDowell v. Steele*, 87 Ala. 497.

In this case, according to the undisputed evidence of A. E. Caffee and his wife, the consideration expressed in the conveyance by him to her, which purported to express the whole and only consideration therefor, did not express the entire consideration, but it does clearly appear, that in addition thereto, another, and so far as appears, a private reservation of the use of the Green property to him for five years, which he says amounted, when considered as cash, to $2,250, but for which notes were held by him, amounting to $3,250,—the notes being for rent of the place conveyed, for $650 a year for five years. This reservation did not result from the nature and character of the transaction of said conveyance, such as the law operating on would secure.

The right to the use and rents is one of the appurtenances of an estate conveyed, and where land is sold and conveyed under lease, the grantee, after the execution and delivery of the deed, is entitled to the accruing rent, unless such right, or the right to collect it, is reserved to the grantor; but it is not necessary that this reservation should appear on the face of the deed.—1 Dev. on Deeds, § 311; *Tubb v. Fort*, 58 Ala. 277; *Coffey v. Hunt*, 75 Ala. 238; *Westmoreland v. Foster*, 60 Ala. 449; *English v. Key*, 39 Ala. 117. This private reservation of a benefit to A. E. Caffee in the conveyance he made to his wife was sufficient, under the law, to make the conveyance to her fraudulent and void as to creditors.

4. On the 22d January, 1896, the defendant, A. E. Caffee, also executed to one W. P. Russell, two mortgages, one for $1,500, and the other for $3,000, the first to secure an indebtedness for that sum evidenced by the note of said Caffee of that date, payable to said Russell on the 15th November, 1896, and the other, to secure an indebtedness of $3,000, evidenced by his note to said

Russell of same date, payable on the 15th November, 1897. Each mortgage was upon the same property—a lot in Marion, Alabama, with residence thereon, called the Garrett place, together with certain personal property in said mortgages described. The bill, also, attacks these two mortgages as being fraudulent,—made and accepted for the purpose of hindering and defrauding the complainant in the collection of its indebtedness due and owing by said A. E. Caffee.

As to the $3,000 mortgage it is sufficient to say, as it satisfactorily appears from the evidence, that it was paid and cancelled, before the filing of the bill in this case, and was no obstruction in preventing complainant from collecting its debt. The testimony of both Caffee and Russell show this.

On the 3d November, 1898, as the evidence of Caffee tends to show, there remained due and owing on said $1,500 mortgage the sum of $531.89. He testified: "I now owe Dr. Russell $500, with interest, from November 3, 1898, and Dr. Russell claims some errors in amount paid to me from the probate office, amounting to less than a hundred dollars. If he is correct, I owe him not less than $700." Russell testified and stated his account from his books, which shows, as he claims, an indebtedness of some $565. What the true amount of that indebtedness is, we do not now undertake to ascertain. We may say, however, that according to the evidence of both Caffee and Russell, the mortgages were for a *bona fide* indebtedness of Caffee to the latter, and were not simulated and made to defeat the creditors of Caffee. There is a great deal of evidence taken to sustain the contention of the respective parties, which would without apparent necessity therefor, involve much time and labor to discuss. The learned Chancellor concluded that these mortgages were not subject to the attacks made on them, and we have not discovered any satisfactory reasons for coming to a different conclusion.

The decree as to the Russell mortgages will be affirmed, but as to the conveyance of said Caffee to his wife, of date the 20th January, 1896, conveying to her the

Green and Graham places as therein described, it will be reversed, and one here rendered, declaring the same to be fraudulent and void as to complainant. It is also further decreed, that said A. E. Caffee is due and owing to complainant, the sum of $1,462.16, the amount of said judgment against him in Lowndes Circuit Court, with interest thereon to the present time, besides the sum of eighteen and 38-100 dollars ($18.38) costs. The costs of the appeal in this court and in the court below will be taxed against and paid equally by the said Caffee and wife and the complainant; and costs of the case in the Chancery Court will also be taxed, equally, against and paid by the complainant and the said Caffees, A. E. and Annie E., for which executions may issue. If this decree is not satisfied by the defendants, the said A. E. and Annie E. Caffee, within thirty days from the enrollment of the same in this court, the Register of the chancery court will proceed to advertise and sell said lands described in said deed from said A. E. to Annie E. Caffee, in the manner prescribed by law for sales of land levied on under execution, and from the proceeds of sale, he will first satisfy the debt and costs of the chancery court and of the circuit court taxed against said A. E. and Annie E. Chaffee, and the balance pay to the said Annie E. Caffee or her solicitors.

Affirmed in part, reversed and rendered in part.