[Goetter, Weil & Co. *et al.* v. Norman Bros. *et al.*]

# Goetter, Weil & Co. *et al.* v. Norman Bros. *et al.*

*Bill in Equity to set aside Conveyance for Fraud.*

1. *Preference by insolvent debtor.*—An insolvent debtor may, by sale made in good faith, devote his entire property to the payment of one creditor, to the exclusion of the others.

2. *Dealings between persons occupying confidential relations towards each other.*—The law does not prohibit persons who are *sui juris*, standing in the nearest relations of consanguinity or affinity, or the most intimate of business relations, from dealing with each other as with strangers, but, as between themselves, courts of equity will not permit an advantage to be derived from a breach of the confidence of the relation.

3. *Preferences given to relation.*—As the law permits a failing or in-

[Goetter, Weil & Co. *et al.* v. Norman Bros. *et al.*]

solvent debtor to prefer creditors, there is no substantial reason for regarding with suspicion a preference given to a relation, when it is unaccompanied with positive *indicia* of fraud.

4. *Same.*—That a sale by an insolvent debtor, in payment of a valid debt, was to his mother, who lived under the same roof with him, is insufficient to prove that the sale was fraudulent.

5. *Proof of adequate consideration neutralizes all badges of fraud.*— When a pre-existing debt is established and it is shown that in payment thereof, property, not more in its fair and reasonable value than an equivalent for the debt, has been taken, all badges of fraud are neutralized.

6. *Sale of property of insolvent partnership in payment of individual debt of partner.*—A sale and conveyance of partnership property, the partnership being insolvent, or in failing circumstances, in payment of the separate debt of one of the partners to whom the partnership is not indebted, is a fraud upon the partnership creditors and if such payment forms part of the consideration of the sale and conveyance of partnership property in payment of partnership debts, it is the reservation of a benefit to the partner whose debt is paid, which vitiates the transaction.

7. *Same; where partnership debt exceeding value of property is part of the consideration.*—Where, in the sale of partnership property by an insolvent firm, the partnership indebtedness, which was in part the consideration for the sale, exceeded the fair value of the property, the fact that an additional consideration was the payment of the private debt of one partner does not vitiate the sale as to partnership creditors.

8. *Bona fides of consideration of sale; estoppel in pais.*—Where the adult sons, on the death of their father, asssent for years to the verbal dispositi n by their father of his estate, consisting of land and personalty, to his wife, and the minor sons, influenced by the assent of their elder brothers, also assent thereto on reaching majority, and the wife, relying on the assent of the children to the wish of her husband, retains possession, such assent being given when the sons were free from debt, the subsequent creditors of the sons cannot claim that such disposition to the wife was ineffectual, and therefore a sale by such sons, on their becoming insolvent, to repay loans made them by the wife from the property so received, was without consideration, as the sons would be estopped to deny the validity of such verbal disposition by their father.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOMAS M. ARRINGTON.

The bill in this case was prosecuted by the complainant in the court below from a decree refusing the relief prayed for in the bill, and sustaining the conveyance which is attacked as fradulent. The facts of the case,

[Goetter, Weil & Co. *et al.* v. Norman Bros. *et al.*]

material to the question decided on the present appeal, are sufficiently stated in the opinion.

T. H. WATTS, for the appellants.—In order to uphold the sale by Norman Bros. to their mother, it is necessary to show that there was a *bona fide* debt due from Norman Bros. to the mother; that the goods and other property conveyed were not greatly in excess in value over the amount of the debt; that the goods and other property was accepted in absolute payment of the said debt; that no benefit was reserved to Norman Bros. *Levy v. Williams*, 79 Ala. 171. The burden of proof was on Mrs. Norman to prove that the transaction came within the above rule, after the complainants proved the existence of their debts before the conveyance.—*Harrell v. Mitchell*, 61 Ala. 270; *Hubbard v. Allen*, 59 Ala. 300.

If any part of the alleged debt was simulated, the whole transaction was fraudulent.—*Penn v. Moore*, 10 So. Rep. 343; *Page v. Francis*, 11 So. Rep. 736.

If the partnership of Norman Bros. conveyed the said property in payment or part payment of the individual debt of William Norman, the whole sale was fraudulent.—*Pollock v. Pritchett*, 82 Ala. 169.

Though the conveyance covered partnership and individual property, if the partnership property was not devoted by the deed to partnership debts and the individual property to individual debts, but the whole property devoted to the payment of partnership and individual debts alike, equity will not apply the partnership property to the payment of the partnership debts and the individual property to the individual debts.

The inclusion of the individual indebtedness of William Norman and the inclusion of the other $557.50 which was a debt of neither of them was a fraud on the creditors of Norman Bros. which vitiated the whole transaction.—*Rothenberg v. Bradley*, (Miss.) 10 So. Rep., 922; *Pollock v. Pritchett*, 82 Ala. 173.

If Mrs. Norman had received goods from the store and the amount or value of said goods so furnished had not been paid and was not deducted from the indebtedness, a fraud was committed.—*Pollock v. McRae*, 91 Ala. 401.

The irreconcilable inconsistency and conflict in appellees testimony materially impair the *weight* of the evidence as to the *existence* and *validity* of the indebtedness,

and when the connection between the parties and all the circumstances are considered, the *bona fides* of the consideration of the sale should be shown by *clearer and more convincing* proof against creditors whose debts and rights are established.—*Hobbie & Teague v. Owens*, 81 Ala. 470; *Hubbard v. Allen*, 59 Ala. 300; *Harroll v. Mitchell*, 61 Ala. 281.

SAYRE & PEARSON, for the appellees.—The respondents recognize the rule that the burden is on them to show the *bona fides* of the antecedent debt, and its adequacy as the purchase price of the property alleged to have been sold in payment thereof, and, this being the case of a transaction between a mother and her sons, that the rule formulated for such cases is that fuller and more convincing proof is required where the transaction is between relatives, than would be required if the parties were strangers. But it is apprehended that this rule was never intended to mean that the court should approach the consideration of the testimony of witnesses with a preconceived distrust of their truthfulness, nor that if conviction is produced by the evidence, it is necessary to go further and adduce evidence "more convincing."—*Micou v. Nat. Bank*, 104 U. S. 530.

The only question raised in the court below, and it is presumed the only question which will be raised on this appeal, was the question of the *bona fides* of the debt alleged to have been due from Norman Bros. to E. A. Norman. It was admitted that the property conveyed was not in excess of the debt, and this the evidence fully sustains.

On the part of complainants it is contended that if it be conceded that Norman Bros. were indebted to E. A. Norman, as set up in the answers of the several respondents and as recited in the bill of sale, and as the evidence on behalf of respondents tended to show, in the sum of $9,000.00, yet the conveyance was void because, it is alleged, the proof is that a part of the indebtedness of $8,000.00 evidenced by the note of September 21st, 1891, was the individual debt of W. L. Norman. But the evidence in this case fully supports the adequate legal reply to this contention that individual property of W. L. Norman in amount sufficient to offset the alleged individual indebtedness was included in the sale. There

is no proof that G. H. Norman had individual creditors, or that they complained of this application of his property. And unless the fact of the existence of such creditors and their objection is to be presumed for the purpose of reaching the conclusion of fraud, the fact that individual property sufficient in amount to discharge an individual debt is so applied, can not affect the application of partnership property to partnership debts, though done in one and the same transaction. Nor would it be a valid objection that the individual property of one partner had been applied to the individual debt of another so long as the partnership property and the partnership debt discharged by it were left in substantial equipoise. But the contention of complainants in this regard is further satisfactorily answered by the fact that the part of the debt just here in question was subsequently and before the sale to E. A. Norman, *i. e.* on September 21st; 1891, assumed by the partnership, and included in the $8,000.00 note of that date.

The money was loaned to the partnership, not to the individuals, and was enforceable as against the partnership assets, and was not subject to set-off on account of the individual interests of the partners in the estate.— *Watts v. Sayre*, 76 Ala. 400.

Moreover the heirs of Hiram had given the money to their mother, the vendee, or had acquiesced in her claim and use of it as her own, so that it became in fact E. A's money, and the heirs also who were party to the transaction under consideration had conclusively recognized this fact.

As to the main question involving the debt of $8,000.00, respondents rely upon a careful consideration of the entire body of the evidence to show the truth of the substance of their contention. There seems to be no serious controversy as to the Milligan debt of $1,000.00 assumed by the purchaser, though the bill was filed on the theory that this along with the rest of it was fraudulent, and Milligan a party to the fraud. As to the rest of it, that is to say, that part of it evidenced by the $8,000.00 note of Sept. 21st, 1891, there would seem to be as little doubt, if the witnesses who testify with reference to that fact are to be believed. It may be conceded that in accounting for the sources from which the money was derived, covering a long period of time, and many discon-

nected facts, in a number of unimportant and insignificant particulars, the witnesses for respondents contradicted one another, and in some instances themselves. But they all agreed as to the main facts.

It is not conceived to be incumbent upon a vendee absolutely and under all the circumstances when a sale is attacked for fraud, to show the sources from which the money was obtained.—*Reeves v. Skipper*, 94 Ala. 412. The statement in *Harrell v. Mitchell*, 61 Ala. 279, was made, *arguendo*, in reference to a statement of fact that would in the nature of things require some explanation. If it were shown, as it was in this case, that the vendee, being a careful and money saving person, was the daughter of a man comparatively wealthy, had been the wife for many years of a prudent and money making man, and had at his death succeeded to the control of his entire property in addition to her own—these facts alone ought to make the assertion on her part that she had loaned $8,000.00, not a severe tax upon credulity, nor to require further explanation.    But she is corroborated in various ways, not to mention the positive testimony of all her sons, who would alone be expected to know much of her affairs

Whatever of inconsistency or contradiction may be found in the testimony of the witnesses may be accounted for without resorting to the hypothesis of perjury and fraud.    Of Mrs. E. A. Norman in particular, it may be said that she is advanced in years, unaccustomed to the forms of law, as she says, unfitted to cope with the cultivated shrewdness of counsel, she is not trained to accuracy of expression, and is probably loose in her mental processes, garrulous, querulous, notional, ignorant of the import of legal terms.    But none of these imply untruthfulness.    In speaking of her money she uses round numbers because the questions were not framed to elicit other answers, and because there was no apparent occasion for exactness.    Many of the matters inquired about were of ancient date, and separated by long intervals of time.    However confused her answers, they exclude utterly the idea of guile.    And yet she had loaned the money in question, or else she had deliberately joined in a carefully prepared scheme of fraud and perjury.    The court will not willingly disregard her testimony, nor that of her three sons, of whom, if it must be said they will

be discredited because kin, it must also be said that they are the only persons who would in the natural course of events have knowledge of the facts about which they testify.

BRICKELL, C. J.—The purpose of the original bill filed by the appellants, creditors of a partnership, known as Norman Brothers, is to vacate because of alleged fraud, a sale and conveyance of property real and personal, the debtors had made to their mother, the appellee, Elizabeth A. Norman. The conveyance purports to have been made in payment of a debt due from the grantors to the grantee.

The principles of law by which the validity of the transaction is governed, have been the subject of such frequent discussion and consideration, that the mere statement of them is all that is now necessary or proper. A debtor in failing circumstances, or actually insolvent, his property not being subject to liens or encumbrances, may by a sale made in good faith, devote his entire property, or any part thereof to the payment of one or more creditors to the exclusion of all others. Failing, or insolvent debtors, have the power and the right to prefer the payment of one creditor to another. If they had not, as has been often said, they could make no payments at all, for whoever was paid would receive a preference. The real motive and intent being the payment of a just debt, the amount of the debt being the reasonable equivalent of the value of the property taken in payment, the transaction is unaffected by the statute of frauds, though its known effect may be the delay or disappointment of other creditors equally meritorious, or may prevent them from receiving any payment whatever. The statute of frauds is directed against intentional fraud of legal injury to creditors. The payment of a just debt is not a fraud, and cannot be of legal injury to a creditor who is not paid—it is but the satisfaction of a legal obligation, and the discharge of a moral duty. The principle proceeds on the hypothesis that there is a just debt, and the real intent is its payment; the two must coexist—of course, if there is a secret trust, or a reservation of a benefit to the debtor, the element of good faith is wanting, and an unlawful intent intervenes which vitiates the transaction, however just may be the

debt, and however it may approximate the value of the property.

The controversy in this case resolves itself into the inquiry, whether the debt in payment of which the sale and conveyance was made, was a real and subsisting debt, or was it feigned and simulated to give color to the sale and conveyance, for there is no room for doubt that the debt if real, exceeded the value of the property conveyed; nor is there room for the just and reasonable imputation that there was a secret trust, or the reservation of a benefit to the debtors, attending the transaction. The inquiry involves largely only matter of fact. The city court after a consideration of the testimony, reached the conclusion that the debt was real and supported the sale and conveyance. We have examined and considered the evidence, and we are not satisfied to disturb that conclusion.

A discussion of the testimony would serve no useful purpose. Each case of this character depends upon its own particular facts—numerous as are the cases, it can scarcely be said that any two are twin brothers. Upon questions of fact never exactly alike, it is but seldom that precedents are of practical value; and they are often overworked in the effort to apply them to other cases of varying facts, circumstances and conditions. It is enough to say, we must pronounce a volume of testimony proceeding from grantors, the grantee, and others corroborating them, having full opportunity to know the facts to which they testify, as absolutely untrustworthy, or we must affirm the conclusions and decree of the city court.

The relationship of the grantors and the grantee, and the fact that they lived together under the same roof, prove nothing unless connected with other facts and circumstances having a just tendency to prove fraud.—*Troy Fertilizer Co. v. Norman*, 18 So. Rep. 201: *Teague, Barnett & Co. v. Lindsay*, 17 So. Rep. 538. The law does not prohibit persons who are *sui juris*, standing in the nearest relations of consanguinity or affinity, or the most intimate of business relations, from dealing with each other—from lending and borrowing, from buying or selling, or from entering into any contract or engagement into which they could enter if they were strangers. If they stand in confidential relations, as between themselves, courts of

equity will not permit an advantage to be derived from a breach of the confidence of the relation. But as to others, there is no limitation or prohibition of contracting between themselves. As the law permits a failing or insolvent debtor to prefer creditors, it is difficult to assign any real, substantial reason, for regarding with suspicion a preference given to a relation. It was well observed in *Micou v. National Bank*, 104 U. S. 543, as the law confers upon an insolvent debtor the right of choice among his creditors, it does not require that in the exercise of the right, he should "discriminate against his own flesh and blood." In *Coley v. Coley*, 14 N. J. Eq. 352, it was observed by Ch. Green : "A debtor in failing circumstances has an undoubted right to prefer any creditor, as well a parent or other near relative as a stranger, and if the debt were *bona fide* due, the strongest considerations of duty may prompt a son to give preference to the claims of a widowed mother, who had given credit upon the faith of the son's integrity over the claims of mere strangers." In *Schultz v. Hoagland*, 85 N. Y. 468, it was said : "The relation of assignor and assignee, and their intimacy and friendship, and the preference given to the latter as a creditor prove nothing by themselves. They are consistent with honesty and innocence, and become only important when other circumstances, indicative of fraud, invest them with a new character and purpose, and transform them from ambiguous and equivocal facts into positive badges of fraud." In the cases of *Hubbard v. Allen*, 59 Ala. 283, and *Harrell v. Mitchell*, 61 Ala. 270, which are supposed to assert a contrary proposition, the relationship was accompanied by positive *indicia* or badges of fraud, which it was declared ought to be neutralized or removed by clear and convincing evidence ; by a higher degree of evidence of the consideration, than would be exacted if the relationship had not existed. The proposition must be accepted in connection with the particular facts of the cases, and when so accepted, we do not doubt its correctness. And it may be observed, *Harrell v. Mitchell* was not a sale and conveyance in payment of debts ; but a sale and conveyance for money paid, and was not controlled by the principles which govern sales and conveyances to pay debts. When a preexisting debt is established—when it is

shown that in payment of it, property not more in its fair and reasonable value than an equivalent for the debt has been taken, all badges of fraud are neutralized. Falsehood and fraud are not to be lightly imputed; they must be proved, not presumed. It is but seldom they are the matter of direct, positive testimony. Most often, they are the matter of deduction or inference from tangible facts and circumstances, naturally and logically indicating their existence. "Such facts, nevertheless, must be of a character to warrant the inference. It is not enough that they are ambiguous, and just as consistent with innocence as guilt. That would substitute suspicion as the equivalent of proof. They must not be when aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting." *Shultz v. Hoagland*, 85 N. Y. 467. The mode of dealing the grantee and grantors pursued, from which the circumstances of suspicion are principally deduced, may not have been that which would have been pursued, if men familiar with and engaged in like transactions had been the actors. But it corresponded to their condition in life, their relations, and the circumstances attending them. If from these there had been a departure the departure would have been a circumstance generating stronger suspicion.

A sale and conveyance of partnership property, the partnership being insolvent, or in failing circumstances, in payment of the separate debt of one of the partners to whom the partnership is not indebted, is a fraud upon partnership creditors. If such payment forms part of the consideration of the sale and conveyance of partnership property in payment of partnership debts, it has been declared the reservation of a benefit to the partner whose debt is paid, which vitiates the transaction.—*Pritchett v. Pollock*, 82 Ala. 169. The debt contracted with the grantee by one of the partners in the purchase and improvement of the storehouse, which was used and occupied by the partnership, near the whole period of its existence, without the payment of rent, or a demand for its payment, it would be a matter of some difficulty to treat as a separate debt, falling within the influence of the doctrine of the case to which we have referred. However this may be, the real in-

debtedness of the partnership, exceeded the fair value of the property, and the inclusion of this debt will not vitiate the sale and conveyance.—*Troy Fertilizer Co. v. Norman, supra; Hayes v. Westcott,* 91 Ala. 143; *Fargason v. Hall,* 99 Ala. 209.

It is strenuously insisted, the money which passed into the possession of the grantee on the death of her husband, the father of the grantors, and which formed a part of the money loaned, was not her money, but money to a part of which, as distributees of their deceased father, the grantors were entitled. The father died intestate, and of consequence, by operation of law, whatever of real estate he had descended to his heirs, and after the payment of debts, whatever of personal property he may have had, was subject to distribution according to the statute of distributions. His verbal expression or wish, however solemnly and deliberately declared, that his wife should take and hold, or should control and dispose of his estate, could not intercept or break the course of descent and distribution the law prescribes. The expression was not without moral force, and if in a spirit of filial reverence the children who were *sui juris,* having knowledge of all the facts yielded assent to it, the courts must be reluctant to displace it, or to permit the assent when given to be retracted. The assent may be implied without an express writing, from a long course of dealings consistent only with its existence.—*Williams v. Williams,* 2 Dr. & Sm. 376; 2 L. & R. Ch. App. 294. At the death of the father, he had five children, sons, his heirs and next of kin, three of whom including the vendors then were of full age, and two were in minority. With full knowledge of all the facts, the adult children immediately yielded assent to the verbal disposition the father had made, and the assent had been continuous for a period of eight years or more prior to this transaction, with the indication of no purpose to depart from it, if retraction had been their right. The sons in minority, as they became of age, it is but just to presume influenced by the assent of their elder brothers, assented and acquiesced, and their conduct has been in accordance with it. The mother relying upon the declared will and wish of her husband, to which her children yielded willing assent, retained possession of the lands and money, commingling the moneys

[Schloss *et al.* v. Rovelsky.]

with her own, and employing them as her own. The children have borrowed, and some have repaid. She has made voluntary conveyances of parts of the lands, and of one parcel, a sale to one of the sons  The assent of the grantors was yielded, near or quite eight years before the debts of complainants were contracted, when they were free from debt, and were not contemplating the creation of debts.  Upon well settled principles, if either of the sons were now seeking to dispute the title of the mother, no court could hesitate to declare that he was estopped.  In 2 Story Eq. (13th ed. § 154). quoting from a decision of the House of Lords, the doctrine of estoppel is thus expressed:  "It is a general law that if a man, either by words or conduct, has intimated that he assents to an act which has been done, and that he will not offer opposition to it, although it could not have been lawfully done without his consent, and he thereby induces another to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct." And again,  "If a party has an interest to prevent an act being done, and acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice, than he would have, had it been by his previous license."  The estoppel resting upon the grantors, being free from all fraud, binds their creditors.  One claiming under or through another who is bound by an estoppel, is affected and bound by it.—*Lindsay v. Cooper,* 94 Ala. 170.

The decree of the City Court is affirmed.