# Union Baptist Church, *et al. v.* Roper.

## *Bill to Foreclose a Mortgage.*

(Decided February 13, 1913.   61 South. 288.)

1. *Lost Instrument; Mortgages; Foreclosure; Proof Required.—* Before equity will foreclose a lost mortgage, its execution and former existence must be as clearly established as though the bill had been primarily filed to establish it as a lost instrument.

2. *Same; Evidence.—*The evidence considered and held insufficient to show the execution of the mortgage sought to be foreclosed.

(McClellan, J., dissents.)

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Bill by William H. Roper against the Union Baptist Church of Mobile, and others, to foreclose an unrecorded mortgage alleged to have been destroyed by fire. Decree for complainant and respondents appeal. Reversed and rendered. .

B. BOYKIN BOONE, for appellant.   The same measure of proof is required here as would be required in a bill to reform the instrument, or to establish it as a lost instrument.—*Shorter v. Shepherd,* 33 Ala. 468; *Loftin v. Loftin,* 96 N. C. 94; *Elyton L. Co. v. Denny,* 108 Ala. 562.   The evidence is insufficient to find that the mortgage had been executed, and hence, insufficient to authorize relief.—86 Me. 300; 19 Ill. 626; Am. Dec. 685; 25 N. Y. 125; 16 N. J. E. 401; 145 Pa. St. 497; 36 Atl. Rep. 954.

GAILLARD & MAHORNER, for appellee. The burden laid upon complainant has been fully met by the evidence in this cause, and the court properly decreed the relief sought.—*Hill v. Helms,* 86 Ala. 442; *Shorter v. Shepard,* 33 Ala. 648; *Farrior v. N. E. M. Co.,* 88 Ala 275.

DE GRAFFENRIED, J.—This bill was filed on January 10, 1910, by Wm. H. Roper against the Union Baptist Church of Mobile, and sought the foreclosure of a mortgage which the complainant alleges was executed and delivered to him by the respondent on or about June 20, 1890, to secure an alleged indebtedness of $500. The bill alleges that the respondent made to the complainant 10 notes of $50 each, the first note maturing 90 days after its date, and the other 9 maturing successively 90 days after the maturity of the previous note, and that said mortgage was executed to secure the payment of said notes. The bill further alleges that the mortgage was never recorded, and that said notes and mortgage had been burned. The respondent filed an answer denying that it ever owed the complainant said money, and also denied that it ever executed the said notes and mortgage.

It will be seen from the above that the bill was filed nearly 20 years after the alleged execution and delivery of the notes and mortgage. The evidence of the complainant showed that said notes and mortgage—if they were ever executed—were destroyed by fire on the 13th day of May, 1900, nearly 10 years before this bill was filed. The complainant was a member of said church at the time of the alleged execution of said notes and mortgage, and at the time they are alleged to have been destroyed by fire, but he severed his connection with that church at least seven years before he filed this bill.

[Union Baptist Church, et al. v. Roper.]

To use his own language: "I ceased to be a member of the Union Baptist Church seven or eight years ago, seven I think. I ceased because of a good many little reasons. I became disgusted and withdrew myself."

We can understand why the complainant withheld his mortgage from the record. There was no law requiring him to record it, and, if he had produced it, the fact that it had not been recorded would have been worth nothing to the respondent. We can understand how the mortgage could have been destroyed by fire and can also understand why the complainant, so long as he remained a member of the Union Baptist Church of Mobile, even after the alleged destruction of the mortgage by fire, should have hesitated about filing this bill. We are not, however, able satisfactorily to explain to ourselves consistently with the existence of a duly executed and valid mortgage at the time of its alleged destruction the failure of the complainant for a period of at least seven years after he had become disgusted with said church, and had, for that reason, severed his connection with the said church, to invoke the aid of a court of equity to establish the mortgage or to file the present bill. When the mortgage was destroyed by fire —if it was so destroyed—a court of equity was open to the complainant, and would, at his instance, upon proper proof, have ascertained that the mortgage had been destroyed, and have re-established it for him. While the law did not require complainant to so act, nevertheless his failure so to do has resulted in the necessity for a mass of oral evidence covering the question as to whether the respondent 20 years before the time when the witnesses testifying about the matter were called upon to testify about the same owed the complainant any money or executed and delivered to him, in legal form, the notes and mortgage referred to.

The long delay of complainant in seeking redress, especially that part of the delay which occurred subsequent to the alleged fire, and the absence of the mortgage from the records, are matters of grave import, when it is remembered that the delay has resulted in the death of most of those who were in a position to know most of this matter, and has certainly impaired the value of the testimony of witnesses called upon to give their recollection of an alleged transaction which occurred twenty years before they testified. Human recollection is subject to some uncertainty when at its best, and when that recollection relates to business matters and the details of business matters which occurred at so distant a period as twenty years, when there is no writing, no memorandum, no record from which the recollection can be refreshed, then human recollection, as a general rule, becomes frail indeed. While the complainant and his niece testify that the alleged notes and mortgage reposed in the appellant's desk from the time of their alleged delivery until their destruction by fire nearly 10 years before the filing of the bill, and while a former pastor of the church testifies that a mortgage was delivered to complainant, neither the appellee, his niece, nor the pastor attempts to testify that the mortgage was acknowledged, or that it had been otherwise executed in accordance with the formalities of law. While other witnesses testify that the mortgage was signed by the proper authorities of the church under the authority conferred upon them by a resolution adopted by the members of the church at a meeting called for that purpose, and there was evidence that said mortgage was signed before a notary public, all this is bitterly denied by many witnesses who testify in the case, and no writing, no memorandum, and no book of the church is before us showing that any such

resolution was ever considered by its membership, and even the name of the notary public before whom the alleged mortgage was executed is not mentioned by any witness. Everything in this case is dependent upon human recollection, and on every subject the evidence is in direct conflict. The Union Baptist Church of Mobile is a church whose membership is composed exclusively of colored people, and it is evident to us that a large number of the witnesses who testify to the material facts of this case are ignorant and but little accustomed to the transaction of the character of business about which they testify. The appellee did, indeed, have summoned as a witness in his behalf the lawyer, who, it is claimed, prepared the notes and mortgage, and in whose office it is claimed that they were signed, but that witness died before he was examined. If he had testified, we would have had before us—conceding that his testimony would have been favorable to appellee—the recollection of a busy lawyer about the preparation of papers—the mere routine, ordinary, daily business of a lawyer's office—20 years before he testified.

These suggestions are thrown out simply to indicate the uncertainty and infirmity that must, necessarily, attach, under the circumstances of this case, to the appellee's own evidence, and upon the appellee is cast the burden of the proof as to all the material allegations of his bill of complaint. While this is not a bill to establish the alleged lost mortgage, but to foreclose a lost mortgage, equity will not grant relief unless the execution and former existence of the mortgage is as clearly established as if the bill had been filed primarily to establish such alleged lost mortgage. It has ever been the rule that, to justify relief in such a case, the proof of the execution and delivery of the lost deed, mortgage, or other paper writing should be clear and convincing.

"The complainant, however, must not only account for the absence of the deed, but he must also clearly prove its existence as a genuine instrument. If he suc-. ceeds in making this preliminary proof, he will be permitted to show by parol the contents of the deed. But the evidence of such contents must be pointed and clear. No vague or uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself."—*Shorter v. Sheppard*, 33 Ala. 648.

The church which it appears the appellee was active in organizing may in its refusal to meet the demands which appellee, in this bill seeks to enforce, unjustly deprive appellee of moneys which rightfully belong to him. While we cannot affirmatively say from all the evidence that such is not the situation, we can say affirmatively that appellee has not, when his evidence is weighed as it should be weighed, met that burden of proof "by clear and pointed evidence" required by courts of equity of the due execution and delivery of the mortgage which he seeks, in this proceeding, to foreclose. He may be right as to the justice of his claim, and the evidence, we think, establishes the fact that the church probably owes him the debt which he claims; but he has not, as we have already said, established the proper execution and delivery of a mortgage by that clear proof which a court of equity in cases like the present exacts. The trustees of the church may have relieved themselves, as some of the evidence tends to show, "of the burden which the church had placed upon them" by executing and delivering to complainant a proper mortgage, but if so, the appellee has not met, by corresponding clear and pointed evidence, the burden which a court of equity placed upon him when he invoked its jurisdiction to grant to him the relief prayed for in his bill.

[Bell v. Shiver, et al.]

The above being our conclusion, it is evident that we are of the opinion that the decree of the court below must be reversed.

The decree of the court below is reversed; and a decree is here rendered dismissing the complainant's bill.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur. MCCLELLAN, J., dissents.