(89 South. 497)

## WATTERS–TONGE LUMBER CO. v. KNOX et al.   (5 Div. 778.)

(Supreme Court of Alabama. June 16, 1921.)

1. **Fraudulent conveyances** ⊜⟲277(2) — **Burden to show lack of fraud held on defendants.**

Where father paid for a house and lot out of the proceeds of another house standing in father's name and had the deed made to himself and son jointly, the burden of proving that the deed was not a fraudulent conveyance as to an existing creditor was on the father and son, in an action by such creditor to have the

deed declared void as against creditors, and on account of their relationship fuller proof must be given of an adequate and valuable consideration than would be required of a stranger.

**2. Fraudulent conveyances ⬤278(1)—Father and son held not to discharge burden of showing bona fides.**

In an action against father and son to declare void as against creditors a deed to the father and son jointly of property paid for by proceeds of other property standing in father's name, *held*, that father and son did not discharge the burden resting on them of showing that the conveyance was not fraudulent.

Appeal from Circuit Court, Tallapoosa County; Lum Duke, Judge.

Bill by the Watters-Tonge Lumber Company against D. R. Knox and others to declare a deed void as against creditors and to subject said property to the debt. From a decree denying relief and dismissing the bill, complainant appeals. Reversed, rendered, and remanded.

S. J. Darby, of Alexander City, for appellant.

The bill and prayer is sufficient to authorize relief. 93 Ala. 106, 9 South. 228; 122 Ala. 343, 25 South. 214. Under the evidence the burden is on the respondent to show that the transaction was fair, bona fide, and for a valuable consideration paid by W. H. Knox. 121 Ala. 100, 25 South. 723; 176 Ala. 48, 57 South. 483; 176 Ala. 490, 58 South. 919; 91 Ala. 470, 8 South. 652; 61 Ala. 270; 59 Ala. 283; 191 Ala. 111, 67 South. 675; 125 Ala. 372, 28 South. 30; 155 Ala. 540, 46 South. 970.

J. Percy Oliver, of Dadeville, for appellees.

A stranger to a transaction cannot take advantage of the statute of frauds in avoidance of the contract. 162 Ala. 327, 50 South. 254; 107 Ala. 562, 19 South. 774; 76 Ala. 361, 52 Am. Rep. 334; 71 Ala. 62. A debtor in failing circumstances may prefer one creditor to another. 26 South. 299; 7 Michie's Ala. Dig. 624.

GARDNER, J. Appellant, a judgment creditor of D. R. Knox, filed this bill to have declared fraudulent and void as to the creditor of said Knox a conveyance to his son, W. H. Knox, of one-half undivided interest in and to a certain lot and residence thereon situated in Alexander City, Ala. From a decree denying relief, and dismissing the bill, complainant prosecutes this appeal.

In April, 1914, D. R. Knox was indebted to the complainant in the sum of $464.87, and executed his note for that amount, due June 1, 1914. In March, 1916, he wrote the complainant, "If I live, I am going to settle this debt during this year;" and on July 12, 1916, he wrote another letter, giving sickness as an excuse for his failure to pay, and stated that he would pay as soon as he could. Two days prior to the date of this letter—that is, on July 10, 1916—said Knox had purchased from one Ingram a residence lot in Alexander City, for a recited consideration of $1,470. While the deed discloses the payment of the sum in full, yet the evidence shows without dispute that the cash payment amounted to about half this sum—said Knox assuming the payment of a mortgage for something over $700, held by one Harrison, which was upon the property at the time of the purchase. Soon after this purchase (the exact date not appearing in the proof) a house was built upon the lot, costing, according to the evidence of D. R. Knox, from $800 to $1,000. W. H. Knox is the son of D. R. Knox, and resided in this residence with his father as a member of the household. He became 21 years of age on March 7, 1916.

On October 9, 1918, the complainant brought suit against D. R. Knox in the circuit court of Tallapoosa county upon the note above mentioned, and recovered a judgment in August, 1919, which was duly recorded. On April 1, 1919, D. R. Knox sold to one Foshee the house and lot above referred to for a cash consideration of $3,250, and on the following day bought from one J. R. Black and wife the house and lot involved in this litigation, paying therefor a cash consideration of $3,100. The Harrison mortgage for $700 continued unpaid upon the first house and lot, and was transferred to the property here in question—D. R. and W. H. Knox having executed the mortgage on this property to secure the $700.

[1] The deed from J. R. Black and wife to the property here in question was made to D. R. and W. H. Knox jointly. The bill charges that this was a voluntary conveyance as to the half interest of W. H. Knox, and was made for the fraudulent purpose of hindering, delaying, and defrauding the complainant from the collection of its indebtedness. The check for $3,250, purchase money for the original house and lot, was paid to D. R. Knox, and he paid to J. R. Black the cash consideration for the property here involved. It therefore appears that, at the time of the conveyance here in question, complainant was an existing creditor, with a suit pending and judgment obtained a few months thereafter, and that the debtor paid the purchase money, and had the conveyance so executed as to convey to his son, who resided with him as a member of his household, a half interest in the property. Under these circumstances, the burden of proving that the deed was not a fraudulent conveyance is cast by law upon the respondents. As said by this court in the recent case of Murphy v. Pipkin et al., 191 Ala. 111, 67 South. 675:

"The sufficiency of the proof of consideration must depend on the relations between the parties, the circumstances surrounding them at the time, and their conduct subsequent to the transaction. The vendees were the daughter and son-in-law of the vendor. Transactions between parent and child are jealously watched in a court of equity, even when the controversy arises between them, and, when the rights of creditors are involved, fuller proof must be given of an adequate and valuable consideration, and of the good faith of grantee or vendee, than would be required of a stranger."

See, also, Hubbard v. Allen, 59 Ala. 283; Harrell v. Mitchell, 61 Ala. 270; Wood & Son v. Riley, 121 Ala. 100, 25 South. 723; Calhoun v. Hannan, 87 Ala. 277, 6 South. 291; McCrory v. Donald, 68 South. 306, 192 Ala. 312; Goetter & Co. v. Norman Bros., 107 Ala. 585, 19 South. 56.

In Harrell v. Mitchell, supra, the opinion draws attention to the fact with what ease the consideration for the transfer of property may be feigned, and how essential it is that it should appear also that the grantee had the ability to make the purchase; the court saying:

"Clear evidence of ability to make the purchase is vital to sustain the transaction against creditors, whose right to appropriate the property of the grantor to the satisfaction of their demands is clear, and founded on law and good conscience."

Speaking of cases of this character, continuing, the court said:

"It is true, fraud is never presumed—that it must be proved by clear and satisfactory evidence, and when a transaction is susceptible fairly of two constructions, the one which will support and free it from the imputation of impurity of intention will be adopted. Fraud, like crime, may nevertheless be proved by circumstances—it is seldom capable of being proved otherwise—and the number or character of the circumstances which may amount to proof of it can not be defined."

All the authorities show that each case must stand on "the bottom of its own facts," for, as said by this court in Goetter & Co. v. Norman Bros., supra:

"Each case of this character depends upon its own particular facts—numerous as are the cases, it can scarcely be said that any two are twin brothers. Upon questions of facts never exactly alike, it is but seldom that precedents are of practical value; and they are often overworked in the effort to apply them to other cases of carrying facts, circumstances, and conditions."

[2] The burden of proof being upon the respondents to show the bona fides and the fairness of the transaction here involved as against the complainant creditor, only a question of fact remains to be considered, and to this we will make but brief reference. The respondents set up in the answer that W. H. Knox, the son, had furnished a large amount of the money used to build the house on the lot bought from Ingram and sold to Foshee, and also furnished his father as much as $350 to pay off a claim held by Harrison on the property, and that the son at various times had furnished the father sums amounting to about $500, and that in consideration of the money so furnished by him—with which the property sold to Foshee was improved—it was agreed that the father should convey to the son, W. H. Knox, the western portion of the lot; but no deed was ever executed, and it was agreed when the property was sold that the deed from Black be made to them jointly, and that the indebtedness of Harrison should be placed on the lot so bought from Black, and that the son assume the entire Harrison indebtedness of $756.

The father was a carpenter and contractor. There were four children, two girls and two boys—the other son being about grown and earning good wages. W. H. Knox continued as a member of his father's family until May, 1918, when he went to work at Muscle Shoals, where he remained for about eight months, returning to Alexander City. He regards his father's house as his home, although it would seem at the present he is working in Birmingham. In November, 1915, he was a night watchman in Alexander City, receiving $50 per month, and afterwards $55, and later was raised to as much as $60 per month. In the fall of 1917 he was tried and acquitted of murder, and states that he paid the expenses of his trial himself—the attorney's fee amounting to $500, having borrowed something like $300 from the bank on his own note for that purpose.

We do not understand the answer as setting up a joint purchase by D. R. and W. H. Knox of the lot from Ingram, or that W. H. Knox had any part in this particular trade. The evidence, however, especially that of D. R. Knox, was to the effect that he and his son together purchased the Ingram lot, as well as jointly erected the improvements. The son had no bank account, and it does not appear that he ever accumulated any money. He defrayed the expenses of his trial, as before stated, and had to borrow $300 for that purpose. He (the son) states that he paid Harrison $324 on the mortgage, sending the money from Muscle Shoals with which to pay; but the evidence is without dispute that no part of the principal of the Harrison indebtedness has been paid, but that D. R. Knox has paid $56 interest as it fell due. The son and father insist that it was their understanding that, if he paid these sums of money, he was to have a half interest in the property; but no deed was ever executed to that end, the entire matter remaining in parol. If he sent any money

to his father while in Muscle Shoals it was long after the purchase of the Ingram property, and the erection of the improvements thereon; but no written evidence whatever—check or otherwise—is produced to show. the payment of any sum. In the sale of the house and lot to Foshee, and the purchase of the property here in question from Black, the father handled the entire transaction. The son received no part of the purchase money. The consideration received from Foshee was more than sufficient for the payment of the consideration to Black, and if, as insisted by the son, he had a half interest in the property sold, from a business standpoint, no reason appears why the son should assume the full payment of the Harrison mortgage, as he testified was so agreed.

The letter written by the father July 12, 1916, was one calculated to appeal to the sympathies, as one who had been overtaken by sickness and unable to procure work, and yet just two days previous thereto, from the undisputed proof, he purchased a valuable residence lot in Alexander City. The son admits that he may have heard the father mention this indebtedness at some time, although he does not remember when or where. While the son received better pay at Muscle Shoals, yet this was long after the purchase of the Ingram property and the erection of the improvements; and this is likewise true concerning the execution of a joint note by father and son in January, 1918, to the First National Bank. A detailed discussion of the evidence, however, was not intended, and it would serve no useful purpose, although a few other considerations may appear.

The property here in question has evidently enhanced in value. Suit against the father was pending, with judgment in the near future as a certainty, and it is noticeable at this particular time, after so long a delay, the alleged interest of the son is to be protected, —this being substantially all the property owned by the father. W. H. Knox may have, out of a sense of duty, given his father a small share of his earnings during these years; but we are not persuaded that it was done as a payment on this property, or as a loan of any character. The court has carefully considered the cause in consultation, and the conclusion has been reached that the respondents have failed to discharge the burden resting upon them, and that the complainant was entitled to relief.

The decree of the court below will therefore be reversed, and one here rendered, granting the relief prayed, and the cause remanded to the court below for further proceedings therein.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.