172 So. 903

**WILLIAMS, Superintendent of Banks, v. ELLINGTON et al.**

4 Div. 901.

Supreme Court of Alabama.

Dec. 17, 1936.

Rehearing Denied March 18, 1937.

Little & Lightfoot, of Luverne, for appellees.

W. H. Stoddard, of Luverne, and Powell & Hamilton, of Greenville, for appellant.

GARDNER, Justice.

The original bill, filed in April, 1934, attacked as fraudulent and void a conveyance of certain described real estate made by W. J. Ellington to his wife, son, and daughter, bearing date January 5, 1934.

Ellington at that time was indebted to the Bank of Luverne (now in liquidation) in an amount slightly in excess of $2,600, money borrowed from the bank at various times, beginning in October, 1930, and through February 2, 1931, evidenced by several promissory notes.

In the deed, the wife, Irene Ellington, was given an estate to continue during the life of W. J. Ellington in the property conveyed, consisting of 221 acres of land, a warehouse in Luverne, and the residence in Luverne, constituting all the real estate owned by the grantor at the time of the execution of the deed; and upon the death of the grantor, W. J. Ellington, the deed provided that the said property should belong in fee simple to the wife, son, and daughter, share and share alike.

Defendants answered in May, 1934, admitting indebtedness, though denying in general terms the actual sum claimed as due and denying any fraud in the transaction, but insisting that the deed was executed upon consideration of $1,000 cash paid by Irene Ellington to W. J. Ellington, borrowed by defendants from one Compton, and for which they executed their promissory note in the amount of $1,500.

On February 4, 1935, E. R. Ellington, brother of W. J. Ellington, filed an intervention petition, setting up that he held a mortgage for $7,500, executed by W. J. Ellington and wife to him on May 30, 1932, embracing the identical property covered by the above-noted deed, and sought to have its superiority declared. And on February 6, 1935, defendants to the original bill amended their answer so as to aver that at the time of the execution of this deed there was an outstanding mortgage of $7,500 on the property to E. R. Ellington.

The bill was amended so as to attack both the deed and mortgage as fraudulent and void, and as to the mortgage, whether valid or not, was subordinate to complainant's lis pendens lien because not recorded until September 21, 1934, several months following the filing of the bill and the lis pendens notice, and that complainant had no notice thereof.

All of these issues were appropriately presented by the pleadings, and the questions here to be considered are questions of fact, as to which very brief discussion is to be indulged, in accord with the invitation to that end found in section 10336, Michie's Code, following the Act of 1915 (General Acts 1915, p. 594). Williams v. Dent, ante, p. 109, 170 So. 202.

█ As to the deed, it is to be observed that at the time of its execution the grantor was largely indebted to the bank, and the conveyance is to the wife, son, and daughter. The burden of proof was then shifted to defendants to establish by strong and convincing evidence that an adequate and valuable consideration was paid for the conveyance. Watters-Tonge Lumber Co. v. Knox, 206 Ala. 183, 89 So. 497; Allen & Co. v. Sands, 216 Ala. 106, 112 So. 528; Harrison v. American Agricultural Chemical Co., 220 Ala. 695, 127 So. 513; Merchants' Bank v. Parrish, 214 Ala. 96, 106 So. 504; Woody v. Tucker, Willingham & Co., 215 Ala. 278, 110 So. 465.

█ True, the relationship is not within itself a badge of fraud, but under all the authorities, supported by reason and common sense, transactions between such relatives are to be jealously watched, and must be subjected to closer scrutiny than would be required of a stranger. Murphy v. Pipkin, 191 Ala. 111, 67 So. 675; Buell v. Miller, 224 Ala. 566, 141 So. 223; Federal Land Bank v. Rowe, 222 Ala. 383, 133 So. 50.

As to the property conveyed, we are persuaded that a valuation of $10,000 would be a conservative estimate on the proof here submitted.

In filing the original answer, there was no indication that the property was purchased subject to a mortgage, but only that $1,000 was paid. Subsequently the mortgage of E. R. Ellington was introduced into the case, and the proof was that the purchase was subject thereto. The $1,000 is said to have been paid by the wife to the husband. The answer stated that defendants executed their note to Compton who made the loan, but the evidence indicates the loan of $1,500 to the wife, and that she alone signed the note. The evidence is somewhat confusing as to the use of the sum borrowed, but as best we understand W. J. Ellington's testimony (the wife's evidence is meager in this regard), $1,000 was paid to him in cash, and the wife paid

the remaining $500 on his debt, or perhaps on interest he owed his brother. But in any event, the parties only claim $1,000 as paid on the consideration of the deed in question. Compton was Mrs. Ellington's brother-in-law, had married her sister, lived in Dallas, Tex., was on a visit and loaned the money out of cash he had brought with him on his person. He was a Pullman conductor, and his present address defendants do not seem to know. He took no security other than a note from his sister-in-law. She had no property other than that acquired by the deed. She was not asked for other security, nor was her husband asked to sign the note. Compton does not testify, and the note was not produced. He was, under the proof, not available for examination by complainant, and the case of Elyton Land Co. v. Vance, 119 Ala. 315, 24 So. 719, is here without application.

Clearly, the mortgage matter aside, the consideration of $1,000 was wholly inadequate. Buell v. Miller, supra. But other considerations enter into the case which bear upon the result. Upon execution of this deed, the wife was entitled to the possession, use, and profits of the property. But it is clear that the grantor continued in the use, management, and enjoyment of the property exactly to the same extent as if no deed had been made, and the circumstances all lead to the conclusion that this was so understood at the time. This was a reservation of a benefit to the grantor, not resulting from the natural character of the transaction, vitiating in its effect. Such reservation need not be expressed in the deed, but it may be a private reservation, as was discussed in the case of Deposit Bank of Frankfort v. Caffee, 135 Ala. 208, 217, 33 So. 152. All the circumstances considered, including of course the conduct of the parties as outlined, tend to establish such a private reservation.

We have not overlooked the argument that the wife received the benefit in money the husband gave her for furniture and a car, but we are persuaded all of this had no connection whatever with the real estate transaction, and was without regard thereto.

Upon due consideration of all the proof, we do not think defendants have met the burden of proof resting upon them.

And we reach a like conclusion as to the mortgage. This transaction is also between close relations, one brother to another. The indebtedness began in 1920, with a loan by E. R. Ellington to W. J. Ellington of $1,750, another of $1,250 in 1921, $1,000 in 1924, and $2,250 in 1926, aggregating $6,250. No security was required other than a promissory note. The money advanced in each instance was from cash out of a safety deposit box in the bank, E. R. Ellington all the while being in Jefferson and Tuscaloosa counties, and a considerable distance from his brother. No books were kept, and no note or memorandum produced save one made evidently for the purpose of this trial, and which is not very illuminating. The two brothers differ as to any interest payments. It is clear there were no principal payments. According to E. R. Ellington the total interest paid was from four to six hundred dollars, while the testimony of his brother made the estimate much larger. And it must be observed, all were estimates, for no pretense of business methods appear to have been followed.

True too nice a particularity of dealings and transactions between parties so nearly related might produce criticism and some laxity in this regard may be reasonably expected. Wallen v. Montague, 121 Ala. 287, 25 So. 773. But there must be some reasonable limitation, and such extreme laxity as here appears, concerning what must have been viewed by both parties as a considerable sum of money, cannot fail to at least make some impression upon the judicial mind.

E. R. Ellington had lived in numerous places in Jefferson and in Tuscaloosa counties since leaving his Crenshaw county home as a young man. Had supported a family composed of a wife and two sons. At one time he was a mine superintendent, and at another a coal contractor, and while he may have done fairly well, yet it is clear such an amount as involved in this mortgage is at least sufficient to invite caution and the application of some business judgment. The few hundred dollars interest that was paid was by cash carried by W. J. Ellington to his brother E. R. Ellington, who lived some distance away. The mortgage recites that it was given to better secure a note executed by the grantor. But his evidence shows no note was given and none was produced at the hear-

642

ing. The mortgage was filed for record about five months after the original bill in this case was filed. And in a signed statement given the liquidating agent of the bank in April, 1932, as to his assets and liabilities and his net worth, W. J. Ellington made no mention of any indebtedness to his brother, and the explanation of this matter is not very satisfactory.

There are many discrepancies in the testimony of the two brothers, but we forego further discussion of the proof. The burden rested upon E. R. Ellington to establish the bona fides of his debt, and that it was adequate. Federal Land Bank v. Rowe, supra; London v. G. L. Anderson Brass Works, 197 Ala. 16, 72 So. 359.

Appellees argue that no witnesses are produced to contradict the testimony offered. But in cases of this character the courts recognize with what ease a consideration may be feigned, and that fraud may be shown by circumstances, the number and character of which cannot be defined. Each case must stand "on the bottom of its own facts." It can scarcely be said that any two are twin brothers, and it is but seldom that precedents are of practical value. Watters-Tonge Lumber Co. v. Knox, supra. And it has been well said that "a witness may be as thoroughly discredited by the inherent improbabilities of his testimony as by the direct testimony of witnesses." In re Leslie (D.C.) 119 F. 406, 408. And "evidence, even though uncontradicted, need not be accepted as proof of a fact, when it is contrary to all reasonable probabilities of the case." 14 Ency. of Evidence, p. 132.

Upon due consideration of the cause in consultation, we are persuaded the burden of proof has likewise not been met as to the mortgage, and that the transaction also must be stricken down.

In view of our conclusion as to the invalidity of the mortgage, the question as to any superiority of liens is not reached for consideration, and is therefore pretermitted. The trial of the cause in the court below was on proof by depositions, and we are here to review the ruling without presumption in its favor.

Upon the whole case the conclusion is reached that complainant is entitled to the relief sought. The decree will therefore be reversed, and one here rendered granting the relief prayed, and the cause re-

manded to the court below for further proceedings therein.

Reversed, rendered, and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.