194 So. 518

## PLANN v. MORRIS.
### 6 Div. 592.

Supreme Court of Alabama.

March 7, 1940.

Pennington & Tweedy, of Jasper, for appellant.

Curtis & Maddox, of Jasper, for appellee.

178

GARDNER, Justice.

Defendant W. W. Worthington, in November 1929, borrowed from complainant, Morris, $300, executing a note therefor and a mortgage on a house and lot in Oakman, Alabama, where both parties reside. It developed, however, that Worthington had in October, 1922, conveyed this property, together with other parcels of real estate, to his daughter Hazel Worthington Plann, then eighteen years of age and married. By this bill, Morris seeks to establish a reconveyance by the daughter to the father of this particular property embraced in his mortgage, and also seeks to have the conveyances executed in 1922 (three in number) by the father to the daughter set aside and annulled as in fraud of creditors.

By the decree complainant Morris was granted relief in both aspects of his bill.

 The matter of reconveyance of the property by the daughter to the father was sought to be established by parol proof. No deed is exhibited. Upon questions of this character, the burden rested on complainant not only to account for the absence of the deed, but he must also clearly prove its existence as a genuine instrument. If successful in this preliminary proof, then he will be permitted to show by parol the contents of the deed. "But the evidence of such contents must be pointed and clear: no vague or uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself." These general principles and the reasoning upon which they are rested are well stated in Shorter v. Shepphard, 33 Ala. 648, followed in Sorrels v. Cole, 234 Ala. 70, 173 So. 607; Smith v. Owenton Land Co., 219 Ala. 422, 122 So. 663; Union Baptist Church v. Roper, 181 Ala. 297, 61 So. 288. See, also, 18 Corpus Juris 437.

Here, the daughter emphatically denies the execution of any deed to the father, nor does the evidence disclose any particular occasion for a reconveyance as to this particular property, exclusive of the other the father had deeded to her in 1922.

For proof, reliance is had upon the statement of the father to Morris that he had such a deed, and its exhibition to Morris, —the daughter being absent, and so far as the record shows entirely ignorant of any such conversation or exhibition. Morris states he looked at the deed, and it was not recorded. He does not say he read its contents, and makes no effort to give them. He cannot recall the date, but says it was made before Esquire Crownover, and witnessed by his daughter Irene, both of whom were dead. He does not state whether he looked at the signatures, and, if so, whether or not the daughter's husband also signed. All of this is sought to be supplied by the testimony of Crownover's widow, who remembers a time when the daughter and her husband were at the house for Esquire Crownover to fix up some papers, and they signed the papers "he fixed up," and Irene, her daughter, witnessed it. Esquire Crownover died in April 1932, and the widow at one time says this occasion was a few years before his death. But she is uncertain about the whole matter, and especially the time, which on cross-examination she seems willing to place as far back as 1922.

Whether or not complainant has clearly shown this was a genuine deed, is to say the least a doubtful proposition. Such

a conclusion, we are inclined to think, rests too much upon conjecture.

.But, even conceding for the moment, the sufficiency of this preliminary proof, there is no pretense of proof as to the contents. And, as said in Shorter v. Shepphard, supra, "The evidence of such contents must be pointed and clear." The widow of "Squire" Crownover knew nothing of the contents and made no effort to testify thereto; and Morris did not say that he in fact read the deed or knew its contents. Nothing as to the consideration, the date, whether or not the husband's name was signed to the instrument, and no indication whatever as to the title, appears. Did it purport to convey a fee simple title, or only a life estate, or were there reservations of any character? All of this is left to conjecture.

Under the rule of our authorities, we are persuaded complainant failed to make out his case to establish a reconveyance from the daughter to the father, and that the court erred in granting relief as to this feature of the bill.

Upon that theory of the bill seeking to set aside for fraud the conveyances of 1922 to the daughter, Mrs. Plann, little need be said. While complainant's claim arose several years afterward, yet if these conveyances were made with actual intent to defraud, they are void, and may be set aside upon the application to that end by a subsequent creditor. Smith v. Pitts, 167 Ala. 461, 52 So. 402; Allen v. Overton, 208 Ala. 504, 94 So. 477. If actual fraud is shown, it is not important whether it was directed against existing or subsequent creditors. And where the conveyance is voluntary, as here alleged, the grantee therein need not be shown to have participated in the actual fraud. Mathews v. J. F. Carroll Mercantile Co., 195 Ala. 501, 70 So. 143.

And though the relationship of daughter and father is not within itself a badge of fraud, yet transactions between them are to be jealously watched and subjected to closer scrutiny than would be required of a stranger. Williams v. Ellington, 233 Ala. 638, 172 So. 903; Williams v. Mahone, 236 Ala. 94, 182 So. 464; Morrison v. Federal Land Bank, 232 Ala. 138, 167 So. 288.

At the time these three deeds were executed, each reciting a consideration of $1,000 (though it is now insisted this was a mistake of the scrivener, and only $1,000 consideration was intended for all the property), one Cain was pressing the grantor Worthington for a claim and threatening suit. And the proof is ample to support the conclusion that these deeds were made to avoid any consequences in that regard, and that the named consideration was simulated, as charged in the bill. There was too clearly a reservation of benefit by private agreement (Deposit Bank v. Caffee, 135 Ala. 208, 33 So. 152), whereby the grantor father remained all the while in possession of the property (and the property deeded constituted all the grantor then owned), receiving rents, assessing the property for taxation, and paying the taxes thereon. That is, the grantor continued in the use, enjoyment and management of the property as though no conveyance had been made.

We have not overlooked the testimony of these defendants in relation to these conveyances and the consideration therefor, and the argument of counsel in relation thereto. We do not deem a discussion of the evidence would serve any useful purpose, for, as observed in Williams v. Ellington, supra [233 Ala. 638, 172 So. 906], "Each case must stand 'on the bottom of its own facts.'"

While the threatened suit, which was brought a few days following the execution of these conveyances, was dismissed, yet the plaintiff gives a satisfactory reason therefor, and the case here turns upon the actual fraudulent intent at the time the conveyances were made, and is not to be controlled by any subsequent disposition of the suit against the grantor, who admitted the execution of these deeds for such fraudulent purposes.

We are persuaded from all the evidence these conveyances were made with actual intent to defraud, and were correctly cancelled by the decree rendered. It results therefore that so much of the decree which establishes a reconveyance of the mortgaged property and a foreclosure of the mortgage is erroneous, and will be here reversed, and relief denied in that aspect of the bill; and that so much of the decree which cancels as fraudulent and void the three conveyances described in the bill, executed by defendant Worthington to his daughter Mrs. Plann, is due to be affirmed.

,Let the cost of this appeal be taxed equally against appellant and appellee.

Affirmed in part, and in part reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.