SHORES, Justice.
In 1964, Reverend Billy L. Walker acquired a large portion of Lot 3 according to the Plat of Beauvoir Gardens, Montgomery County, Alabama. The northern portion of the Walker parcel adjoined Fleming Road and was divided into Lots A and B, designated as 201 Fleming Road and 207 Fleming Road, respectively. When Walker acquired the parcel, a house and a well existed on each lot. All of the Walker parcel, except Lots A and B, was immediately deeded to Berea Church and construction of a sanctuary for the church was begun. In 1965, municipal water and sewer lines were laid across Lot B, 207 Fleming Road, to the sanctuary. Both the house on Lot B and the sanctuary were serviced by a common meter in the name of Berea Church. Walker admits that there is no written evidence of his having granted the church an easement for water or sewer lines, but insists that he signed what he believed to be an easement, presented him by the City of Montgomery, Alabama. A thorough search by Walker, his attorney and the City produced no such document or any other evidence of its existence or content.
On March 25, 1971, Walker and his wife sold Lots A and B to Jesse R. and Allie M. Bruner. Jesse Bruner knew that water and sewer lines were laid from Fleming Road to the church and that the house on Lot B was connected to the church’s meter. The parties also agree that the Bruners gave their permission for this arrangement to continue. Jesse Bruner later died. Lot B is currently owned by his widow, Allie, and two sons, Ellis and Ed.
On August 11, 1977, after the church refused to remove the water and sewer lines from Lot B, the Bruners filed an action to quiet title against Walker and Berea Church. The trial court heard the matter ore tenus and denied the Bruners’ prayer for relief. The court held that an “apparent easement” for the benefit of the church existed prior to the Bruners’ purchase of Lots A and B, that the Bruners had knowledge of the easement and, therefore, purchased the property subject to it. The Bruners appealed. We reverse.
It has been long recognized that one who purchases land subject to, or with notice of, an easement, takes the estate subject to the easement. Brown v. Alabama Power Co., 275 Ala. 467, 156 So.2d 153 (1963); Scheuer v. Britt, 217 Ala. 196, 115 So. 237 (1928). This principle is intended to prevent the purchaser from escaping his obligation to honor an easement which, in good conscience, he is bound to respect. It is not intended to create an estate in land but rather to protect and enforce the rights of a party in an already existing estate. Therefore, to invoke this principle, it must be affirmatively shown that a valid ease *697 ment actually existed and that the purchaser took the land either subject to, or with notice of, the easement.
The trial court held that an “apparent easement” existed and that the Bruners took the property with knowledge of its existence. As defined in 28 C.J.S. Easements § 3, pp. 628 and 629:
“ . . . ‘Apparent easement’ is another name for a continuous easement; and is an easement the existence of which appears from the construction or condition of one of the tenements, so as to be capable of being seen or known on inspection.

“A continuous easement is one of which the enjoyment may be continued without the necessity of any interference by man. It depends on some artificial structure on, or natural formation of, the servient tenement, obvious and permanent, which constitutes the easement or is the means of enjoying it.”
Granted, if Berea Church held an apparent easement across Lot B, 207 Fleming Road, the principle espoused in Brown, supra, would subjugate the Bruners’ interest to it. However, no apparent easement as defined in the law existed when the Bruners acquired the property.
Our cases consistently hold that an easement can be created in only three ways: By deed, by prescription or by adverse use for the statutory period. Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973); Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771 (1967); Kratchoville v. Cloverleaf Plaza, Inc., 276 Ala. 562, 165 So.2d 112 (1964). Since the church’s use was undisputedly with the permission of, first, Walker and, then, the Bruners, the acquisition of an easement by either prescription or adverse use for the statutory period was not possible. Cotton v. May, 293 Ala. 212, 301 So.2d 168 (1974); Smith v. Persons, 285 Ala. 48, 228 So.2d 806 (1968); White v. Williams, 260 Ala. 182, 69 So.2d 847 (1954).
Was an easement created in favor of Berea Church by deed? As an interest in land, the conveyance of an easement is ordinarily covered by the Statute of Frauds, § 8-9-2(5), Code of Alabama 1975, and must be demonstrated by a writing. Carter v. Stringfellow, 293 Ala. 525, 306 So.2d 273 (1975); Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492 (1954).
Walker and Berea Church admit that the deed granting Lot B, 207 Fleming Road, to the Bruners “reserved no easement or other interest to the Grantor.” They also admit to having no written document evidencing any easement. Walker, however, insists that he signed an easement for water and sewer lines to pass across Lot B at the request of the City of Montgomery. He asserts that the document was given to a City employee for safekeeping. Although a search produced no such document, Walker contends that evidence was sufficient to support the trial court’s finding that an easement existed but that the instrument creating it had been lost. We disagree.
It is generally held that, in order to establish a lost deed, the evidence of the former existence, execution, delivery, loss and contents of the lost deed must be clear and convincing. Turner v. Steber, 259 Ala. 509, 66 So.2d 781 (1953); Plann v. Morris, 239 Ala. 176, 194 So. 518 (1940); Shorter v. Sheppard, 33 Ala. 648 (1859). See, also: 54 C.J.S. Lost Instruments § 13e, p. 814. Walker did not produce evidence which would support a finding that the easement was created by a lost deed, nor did the trial court so find. The evidence will not support an affirmance on this theory.
Finally, Walker contends that the apparent easement was created by implication. As stated in Walker v. Clifford, 128 Ala. 67, 73, 74, 29 So. 588, 591 (1900):
“ . . . if the owner of both the quasi dominant and quasi servient tenements conveys the former, reserving the latter, all such continuous and apparent quasi easements as are reasonably necessary to the enjoyment of the property granted pass to the grantee, giving rise to easements by implied grant. . . . ”
*698 The recognition of an implied easement is based on the existence of a necessary and beneficial use, running from the quasi ser-vient tenement to the quasi dominant tenement, at the time the tenements are severed by a valid conveyance. If such a use did not exist at the severance of the tenement, it cannot be the basis for the later placing of a burden on land. See, generally: 28 C.J.S. Easements § 35, n. 26-29, p. 699. Therefore, our inquiry must focus on the use of the Walker parcel at the time the tenement was severed by Walker’s grant to the Berea Church.
When Walker acquired the entire tenement, the houses on Lots A and B were serviced by wells and the remainder of the parcel was undeveloped. This was also the condition and use to the property when Lots A and B were severed from the whole by Walker’s grant to Berea Church. The water and sewer lines on which this controversy focuses had not been laid across Lot B. In fact, the church building did not exist at the time of the severance. Therefore, no necessary and beneficial use existed from which an easement could be implied by the grant severing the tenement. That being so, no implied easement was created by the grant from Walker to Berea Church. Walker v. Clifford, supra. See, also, Hamby v. Stepleton, 221 Ala. 536, 130 So. 76 (1930) (distinguishing the general doctrine of implied easements from the recognition of an implied right-of-way to an otherwise landlocked estate).
No valid easement existed at the time Walker granted Lots A and B to the Bruners. The Bruners’ knowledge of a permissive use by the church, without more, does not justify subjugating their interest in Lot B to a claim of right asserted by the church. In doing so, the trial court committed error. We, therefore, reverse and remand.
REVERSED AND REMANDED.
BLOODWORTH, MADDOX, JONES and BEATTY, JJ., concur.